612 So.2d 604 (1992)
Melissa R. MOORE, Appellant,
v.
Cezar TREVINO, Appellee.
No. 90-3050.
District Court of Appeal of Florida, Fourth District.
December 30, 1992.
Rehearing Denied February 26, 1993.
*605 Kathryn M. Beamer of Kathryn M. Beamer, P.A., West Palm Beach, for appellant.
*606 Stephen R. Koons and Maxine A. Braten of Jeffrey A. Miller, P.A., Palm Beach Gardens, for appellee.
POLEN, Judge.
Melissa Moore seeks review of an order entered pursuant to her 1990 petition for modification of a 1986 judgment of paternity. We reverse.
Appellant challenges the trial court's jurisdiction to award shared parental responsibility to the father in the modification order, certain findings of fact in three paragraphs of the order, the award of unsupervised grandparental visitation, an award of visitation to the child's aunts as well as its exclusion of evidence regarding a paternal aunt and statements the child made to the mother regarding the grandfather. She also appeals the trial court's denial of her prayer for attorney's fees.
Appellant and the child's biological father, appellee Cezar Trevino, were never married. Appellant's relationship with appellee ceased before the child's birth and did not resume until the child was three years old. Neither appellee nor his parents asked to see the child for the first three years of her life. However, appellant testified that she felt it was important for the child to know her father. In the 1986 final judgment, the court declared appellee, Cezar Trevino, to be the father of the child, required him to pay child support, and awarded the father and his parents "reasonable visitation at reasonable times upon reasonable notice." At that time, appellant agreed to give appellee visitation privileges and also agreed to permit his parents to have access to the child.
In 1990, however, appellant sought to modify the 1986 final judgment. She alleged in her petition that since the entry of final judgment, the father had trafficked in drugs and had pled guilty to a charge of trafficking in cocaine in an amount over 28 grams. This resulted in his incarceration in federal prison. Appellant maintained a relationship with appellee while he was in prison; appellee was given furloughs from time to time. According to appellant, however, during these furloughs, appellee showed little interest in the child; he made it known that he wanted to spend time alone with appellant and required her to procure a babysitter for the child. The petition also alleged that the father both physically and mentally abused appellant in the child's presence. It further stated that the mother became aware, since entry of the 1986 judgment, that the paternal grandfather physically and emotionally abused his wife (the child's grandmother), and that he drank alcohol excessively. The petition also asserted that it was in the best interest of the child if the visitation with the grandparents were supervised. The father filed a counterpetition praying for modification of the final judgment to include more specific and defined structured visitation for the father and his parents without supervision or contact with appellant. It alleged that appellant had unilaterally withheld contact with the father and grandparents contrary to the final judgment of paternity and that appellant was hostile toward the father and his parents. Appellee did not include a prayer for shared parental responsibility.
Shared parental responsibility is awardable to a natural father in cases where the child is born out of wedlock. See Kent v. Burdick, 591 So.2d 994 (Fla. 1st DCA 1991). However, the trial court's award of shared parental responsibility at bar constituted reversible error, because appellee did not pray for custody in his counterpetition. See Rhodes v. Wall, 514 So.2d 437 (Fla. 4th DCA 1987) (reversible error occurred where petition for paternity did not ask for custody, but court awarded shared parental responsibility). When an award of relief is not sought by the pleadings, it is error to grant such relief. Freeman v. Freeman, 447 So.2d 963 (Fla. 1st DCA 1984). In Dodge v. Dodge, 578 So.2d 522 (Fla. 4th DCA 1991), we held that "[o]rdinarily, a trial court that is properly considering the custody of a child is also empowered to consider visitation as a necessary component of any custody arrangement." Id. In other words, the broad necessarily may include the less broad. However, in the instant case we have the *607 reverse situation, and we hold that to permit such relief would offend a party's right to notice and opportunity to prepare a proper defense. Accordingly, we reverse the trial court's award of shared parental responsibility to appellee.
Regarding the trial court's findings of fact in paragraphs 1, 2 and 5 of the order, appellant argues that the trial court's findings of fact are not supported by the record. We agree. Although the trial court found that appellant and appellee lived together at his parents' home, the record shows that appellant and appellee did not have a continuing relationship, that appellant lived alone from the child's birth until the summer of 1989. At that time, when appellee went to prison and could not contribute to the child's support, appellant moved into appellee's parents' home at his suggestion. The trial court also found that appellant's relationship with appellee suffered some "ups and downs." As we previously stated, however, the evidence adduced at the hearing, which included appellee's own admission, showed appellee mentally and physically abused appellant. Thus, there is competent evidence of abuse in the present record, yet it is unreflected in the trial court's findings. We agree with appellant that this factor was not given due consideration as required by section 61.13(2), Florida Statutes, which provides:
The court shall order that the parental responsibility for a minor child be shared by both parents unless the court finds that shared parental responsibility would be detrimental to the child. The court shall consider evidence of spouse abuse as evidence of detriment to the child. If the court determines that shared parental responsibility would be detrimental to the child, it may order sole parental responsibility. If the court finds that spouse abuse has occurred between the parties, it may award sole parental responsibility to the abused spouse and make such arrangements for visitation as will best protect the child and abused spouse from further harm.
(Emphasis supplied.)
We also agree with appellant that the trial court's findings in paragraph two are not consistent with the record. In that paragraph, the court reiterated appellant's claim that there was a significant difference between appellant's and the grandparents' parenting methods. The grandfather did not dispute that his parenting methods did not follow appellant's and he corroborated his refusal to observe appellant's requests to require a set bedtime for the child, that the child have vegetables at dinner, and his refusal to utilize a child restraint seat when he drove with the child. The order also states that the grandfather "suffered from periods of alcohol abuse." The record shows that the grandfather often got drunk and became violent.[1] The grandfather admitted in court that at the time of the hearing he still drank and that he has a "short fuse" and becomes loud and violent when he drinks. Appellee ultimately admitted this to the court. Appellee's sister conceded that her father still abused alcohol at the time of the hearing.
The trial court's findings in paragraph five of the order involve the child's allegations that the grandfather engaged in sexually inappropriate behavior with her.[2] The order states that these allegations were not established by the evidence and that the mother, although she had known about these conditions which affected her child, did not timely seek the advice of a psychologist or other appropriate professional. *608 The record shows, however, that at the first instance that the mother became aware of the grandfather's behavior, she immediately consulted a clinical psychologist, Dr. Deborah Dreschner, and the psychologist advised appellant to move out of the house.[3] Prior to leaving the Trevino home, appellant apprised the incarcerated appellee of his father's behavior, but he advised her that because it involved his father, he would do nothing. Appellee corroborated this testimony.
Dr. Deborah Dreschner, the clinical psychologist who interviewed the child on three separate occasions, testified that she administered the Kinetic Family Drawing Test, which required the child to draw her family. When Dr. Dreschner pointed out to the child that the grandmother, grandfather, father and mother she drew looked happy, the child spontaneously stated, "Daddy hit Mommy and Grandpa hit Grandma, he pulled her clothes." The child also spontaneously spoke about other incidents with the grandfather and her parents.[4] It was Dr. Dreschner's expert opinion that if the situation with the grandfather was not handled properly, it could progress to more serious sexually inappropriate conduct on his part. It was also Dr. Dreschner's opinion that the child had not been coached to perform as she did in the psychological testing or in her interview sessions with Dr. Dreschner. She also testified to her observation that appellant did not speak in a derogatory fashion to the child regarding appellee or the Trevino family. On the contrary, appellant attempted to speak well of appellee to the child in order to preserve the father-child relationship.
The child's preschool teacher testified that appellee had never participated in the child's school activities, that in the entire year the child was in her class, she had never met him. Appellant, on the other hand, participated in all of the school's parent-child activities and exhibited a close bond with the child.
The custody evaluator in this case, Elaine Smith, testified that the child told her about the bathtub incident with the grandfather and that her grandfather liked to see her naked. She also related that the child told her the grandfather told her to "take it [her clothes] off." Ms. Smith expressed her belief that it would be in the child's best interests to permit the grandfather supervised contact only.
Section 61.13(2)(b), Florida Statutes (Supp. 1978), provides that a court may award grandparents visitation rights if the court deems that such visitation would be in the child's best interest. Wishart v. Bates, 531 So.2d 955 (Fla. 1988) (emphasis supplied); see also § 61.13(2)(b)2.c.[5] However, the record is replete with evidence to indicate that unsupervised visitation with the grandparents would not serve the child's best interests. Thus, we reverse the trial court's order to the extent that it approves the grandparents to have unsupervised visitation and also to the extent that it permits supervision by any family member other than appellee.
We hold that no authority exists for the trial court's award of visitation to the child's paternal aunts and that such an award was error. Appellee's cited case on this point, Wills v. Wills, 399 So.2d 1130 (Fla. 4th DCA 1981), is distinguishable. At *609 bar, unlike in Wills, the "non-parent" is not a stepmother who raised the child herself and had become the child's "psychological mother." In fact, even under the circumstances in Wills, that court held that an adequate record had to be made to the effect that such an award was in the child's best interests. Furthermore, the court held that even under those circumstances, "[c]ertainly this type of visitation, [when] contrary to the wishes of the custodial parent, should be awarded with great circumspection." Id. at 1131. There is a substantial body of law holding that visitation rights to a non-parent is unjustified and unenforceable. See, e.g., Sandor v. Sandor, 444 So.2d 1029 (Fla. 3d DCA 1984); Sheehy v. Sheehy, 325 So.2d 12 (Fla. 2d DCA 1975); Tamargo v. Tamargo, 348 So.2d 1163 (Fla. 2d DCA 1977); Rodriguez v. Rodriguez, 295 So.2d 328 (Fla. 3d DCA 1974). At bar, aside from the trial court's lack of authority to make such an award, the mother opposes it vehemently; she maintains that the aunts undermine her authority and are openly critical of her in front of the child. The mother opposes the order that they may supervise the child's contact with the grandparents in appellee's absence. We reverse this award of visitation to the paternal aunts and hold that any supervision of the child by the aunts in appellee's absence under these circumstances would be contrary to the child's best interests.
The foregoing discussion renders moot appellant's fifth point on appeal. Thus, we decline to discuss it and instead address the issue of whether the trial court abused its discretion when it failed to award appellant attorney's fees. The trial court found that appellant and appellee were "in equal posture financially to handle attorney's fees." Appellant argues that "it is obvious that the mother is in a far worse financial position than the father who has more disposable income and no child to clothe, feed, house, or get to school." We agree with appellant. The record shows that the wife's net salary is $1,370 per month, which includes appellee's child support payments. Out of this amount, she must pay $550 per month for rent, $170 in school expenses, and $88 per month for day care. She is left with approximately $560 per month out of which she must pay for electricity, water, telephone, car expenses, medicine, clothing for the child, as well as Burdines and J.C. Penney accounts. Appellee did not dispute these facts. Additionally, appellee admitted that he lives rent-free at his parents' home, has no car payments or other debt, and that his father pays him $250 per week (temporarily reduced from $350 per week at the time of the hearing because he was in the process of repaying his father for his criminal defense on the cocaine trafficking charge). Appellant's financial position is substantially inferior to appellee's. Thus, we hold that the trial court's failure to award appellant attorney's fees and costs constitutes an abuse of discretion. See generally, P.A.G. v. A.F., 1992 WL 352968 (Fla. 4th DCA December 2, 1992); Bachman v. Bachman, 566 So.2d 19 (Fla. 4th DCA 1990); Davis v. Davis, 547 So.2d 309 (Fla. 4th DCA 1989).
Accordingly, we reverse the order on appeal and remand for further proceedings consistent with this opinion.
ALDERMAN, JAMES E., Senior Justice, concurs.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
I am unable to agree with a reversal of this final order in a proceeding to modify a final judgment in a paternity action. As to the custody issue, shared custody is the norm, not the exception. See § 61.13(2)(b)1., Fla. Stat. (1991). I do not accept the notion that it is ever necessary to plead specifically for shared parental custody  either in an original proceeding or in a later attempt to modify an earlier custody decree. See Fla.R.Civ.P. 1.110(b) ("Every complaint shall be considered to pray for general relief.").
I strongly disagree with the reversal on the issue regarding the unsupervised visitation by the grandparents. Appellant's brief is a laboriously detailed account of all *610 of her evidence on the subject. It omits all of the contrary evidence presented by appellee and, of course, sidesteps the believability of the witnesses. The majority has reversed entirely out of dissatisfaction with the trial judge's resolution of hotly disputed facts. Credibility of the witnesses was the single most important factor in the trial judge's decision. He simply chose to reject the testimony of the appellant and her expert witness.
If we are going to decide appellate cases on the basis of which party's evidence we personally believe, we might just as well forget trials and go straight to the appellate courts to decide the facts. I dissent.
NOTES
[1] At all times material to this action, with the exception of the time appellee spent in prison, appellee and his sisters lived on the paternal grandparents' property and maintained close contact with one another.
[2] Appellant personally witnessed the grandfather behave in a sexually inappropriate manner with the child. She witnessed him chant to the child to "take it off, take it all off" and witnessed him constantly refer to the child as "sexy." On one occasion, appellant witnessed the grandfather give the child a piggy-back ride with the child sitting not on the back of his shoulders, but with her bottom to his chest and her crotch in his face. The behavior ceased only when appellant walked into the room; at this point, the grandmother, who had been present, stopped the grandfather, telling him that he had had too much to drink.
[3] After appellant moved out she contacted Kris Karna of the Palm Beach County Sexual Assault Program and her attorney regarding the grandfather's behavior. At that time, Dr. Dreschner felt that leaving the grandparents' home was sufficient.
[4] According to Dr. Dreschner, the child described the grandfather's beer drinking and use of "bad words," as well as an incident where the child was in the bathtub and the grandfather had come in and watched her, which made her feel "funny." She stated that he sat on the toilet seat and "wiggled." The grandfather did not leave until the grandmother came in and got him out. A second incident of which Dr. Dreschner became aware through appellant was the child's report that the grandfather had put his tongue in her mouth and on another occasion had showered with her, the grandfather wearing only what the child called "panties."
[5] Prior to this section's enactment, the law was that an order granting visitation rights to a non-parent of a child whose custody had been awarded to a fit parent was unjustified and unenforceable. See Rodriguez v. Rodriguez, 295 So.2d 328 (Fla. 3d DCA 1974).