724 So.2d 142 (1998)
Dominick BRUNETTI, Appellant,
v.
Diane SAUL and David Saul, Appellees.
No. 98-0256.
District Court of Appeal of Florida, Fourth District.
December 2, 1998.
Rehearing Denied January 26, 1999.
Bennett S. Cohn, Tesuque, New Mexico, for Appellant.
Jeanne C. Brady and Frank R. Brady of Brady & Brady, P.A., Boca Raton, for Appellees.
PER CURIAM.
This is an appeal from an order providing for maternal grandparent visitation over the objection of the father of an out-of-wedlock child. The mother was killed in an accident. We find that the provisions of the grandparent visitation statute applicable here are unconstitutional and reverse.
The child was born in October 1994. The child and his mother lived with the mother's parents, and the father lived with his own parents. When the child was about eight months old the mother filed a paternity action, and the father was ordered to pay child support. The father paid the child support, including arrearages from birth, and has been actively involved in the child's life.
The child was two when his mother was killed, and he then lived with the father. A dispute arose about visitation with the maternal grandparents, and they filed this action seeking visitation pursuant to section 752.01, Florida Statutes (1995), which provides:
Action by grandparent for right of visitation; when petition shall be granted.
(1) The court shall, upon petition filed by a grandparent of a minor child, award reasonable rights of visitation to the grandparent with respect to the child when it is in the best interest of the minor child if:
(a) One or both parents of the child are deceased;
(b) The marriage of the parents of the child has been dissolved;
(c) A parent of the child has deserted the child;
(d) The minor child was born out of wedlock and not later determined to be a child born within wedlock as provided in s. 742.091; or
(e) The minor is living with both natural parents who are still married to each other whether or not there is a broken relationship between either or both parents of the minor child and the grandparents, *143 and either or both parents have used their parental authority to prohibit a relationship between the minor child and the grandparents.
The grandparents did not specify under which subsection of the statute they were seeking visitation. Subsection (a) and (d) are applicable.
In Beagle v. Beagle, 678 So.2d 1271 (Fla. 1996) the Florida Supreme Court held that subsection (e) of the statute was unconstitutional as applied to an intact family because it violated Florida's constitutional right of privacy. Art. I, § 23, Fla. Const. Beagle was limited to an intact family. Id. at 1277. Following Beagle our supreme court held subsection (a) of the statute unconstitutional in Von Eiff v. Azicri, 720 So.2d 510, Case No. 91,647 (Fla. Nov.12, 1998).
This leaves the issue of whether subsection (d), providing for grandparent visitation rights where children are born out of wedlock, is constitutional. In light of Von Eiff we conclude that it is not constitutional. If the father of a child born into a marriage has a right of privacy where the biological mother is deceased, which was the holding in Von Eiff, it follows that the father of an out-of-wedlock child has that same right of privacy.
The appellee grandparents rely heavily on Spence v. Stewart, 705 So.2d 996 (Fla. 4th DCA 1998). In Spence the mother of the child had filed a paternity action against the father and the grandmother moved to intervene in the paternity action, seeking visitation rights. The trial court denied the motion to intervene based on Beagle, but we reversed, concluding that it was unnecessary to reach the constitutionality of section 752.01(1)(d) because section 61.13(2)(b)2.c, Florida Statutes (1995) authorizes courts to award grandparent visitation in dissolution proceedings. We had previously applied the statute to grandparent visitation in a paternity action in Moore v. Trevino, 612 So.2d 604 (Fla. 4th DCA 1992).
In Spence, we phrased the issue as "the right of a grandparent to request visitation in connection with a paternity action" and held that where parents have gone into court for dissolution or paternity proceedings they have "abandoned their right of familial privacy by bringing their dispute before the court." Id. at 998.
In the present case, although there was a paternity action filed in 1995, it is not pending. Unlike the grandparents in Spence who were relying on Chapter 61 grandparent visitation rights in a pending proceeding, the grandparents in this case have only section 752.01 on which to rely.
Anticipating the fact that there is no pending paternity proceeding in the present case, the grandparents remind us that trial courts in dissolution proceedings retain continuing jurisdiction to enter orders regarding children's custody and best interests while they are minors. S.G. v. G.G., 666 So.2d 203 (Fla. 2d DCA 1995) (citing Cone v. Cone, 62 So.2d 907 (Fla.1953)). This case is still distinguishable from Spence, though, because section 61.13, on which Spence is grounded, is only applicable if there is "a proceeding." § 61.13(1)(a). In the present case there was no proceeding in which the grandparents could have sought visitation rights under Chapter 61, and accordingly they must rely solely on provisions of section 752.01 which are unconstitutional.
We therefore reverse.
STONE, C.J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
KLEIN, J., concurs specially with opinion.
KLEIN, J., concurring specially.
I agree entirely with the majority opinion and write only to question the correctness of our decision in Spence v. Stewart, 705 So.2d 996 (Fla. 4th DCA 1998), on which the grandparents rely. We concluded in Spence that where there was a pending paternity action, the parents "abandoned their right of familial privacy by bringing their dispute before the court." Id. at 998. Finding that the parents had abandoned their constitutional right to privacy enabled the panel in Spence to rely on section 61.13(2)(b)2.c, which authorizes grandparent visitation in dissolution proceedings and to avoid having to decide the constitutionality of section 752.01(1)(d).
*144 Florida's Right of Privacy, Article I, section 23 of the Florida Constitution, was worded so as to make it "as strong as possible." Winfield v. Division of Pari-Mutuel Wagering, Department of Bus. Reg., 477 So.2d 544, 548 (Fla.1985). I am troubled by the finding of a waiver of that right by people exercising their constitutional right of access to the courts. Art. I, § 21, Fla. Const. The right of access to the courts is construed "liberally in order to guarantee broad accessibility to the courts for resolving disputes" and applies to dissolution cases. Psychiatric Associates v. Siegel, 610 So.2d 419, 424 (Fla.1992).
There is something essentially unfair, in my opinion, in holding that an unwed mother who is economically compelled to bring a paternity action gives up her constitutional right of privacy against forced grandparent visitation, while an unwed mother who does not go into court retains that right.
I recognize that the Florida Supreme Court cautioned that its holding in Beagle was "not intended to change the law in other areas of family law where the best interest of the child is utilized to make a judicial determination." Id. at 1277. At the same time it recognized "that the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm." Id. at 1276.
Beagle reached the Florida Supreme Court on a certified question from the first district, which upheld the constitutionality of the statute. Beagle v. Beagle, 654 So.2d 1260 (Fla. 1st DCA 1995). Judge Webster disagreed with that conclusion and would have held the statute unconstitutional, explaining:
The proposition that there must be a real threat to a child's physical, emotional or mental well-being before the state may interfere with parental decision-making is not new in this state. See, e.g., Padgett v. Department of Health and Rehabilitative Services, 577 So.2d 565, 570 (Fla.1991) ("compelling interest" justifying state interference in dependency context is protecting children "against the clear threat of abuse, neglect and death"). Given the fact that the nature of the interference is not different in kind pursuant to the statute at issue here from that involved in the dependency context, I fail to see why a lesser showing should be permitted to satisfy the requirement of a "compelling state interest" with regard to the former than is required for the latter.
Beagle, 654 So.2d at 1265 (Webster, J., concurring specially).
I have somewhat the same problem as Judge Webster raised, in that I fail to understand how the "compelling state interest" was satisfied by section 61.13(2)(b)2.c in Spence, if it was not satisfied by section 752.01 in Beagle.