726 So.2d 806 (1999)
S.G., Grandmother of I.C.C.G., a minor child, Appellant,
v.
C.S.G., Natural Mother of I.C.C.G., a minor child, Appellee.
No. 96-4144.
District Court of Appeal of Florida, First District.
January 21, 1999.
Rehearing Denied March 9, 1999.
*807 Jeffrey A. Conner and Lyman T. Fletcher, Jacksonville, for Appellant.
Charles E. Willmott, Jacksonville, for Appellee.
VAN NORTWICK, J.
S.G., the paternal grandmother of I.C.C.G., a minor child, appeals an order from a consolidated proceeding for adoption and modification of a final judgment of dissolution which placed custody of the minor child with I.C.C.G.'s natural mother, C.S.G., the appellee. Appellant argues that the trial court erred in not using a "best interest of the child" standard in making a custody decision under section 61.13(7), Florida Statutes (1995), as between a natural parent and a grandparent with whom the child had been residing in a stable relationship. We agree with the trial court that in a custody dispute under section 61.13(7) custody can be denied to the parent only when it is established that the parent has abandoned the child, that the parent is unfit, or that granting custody to the parent will be detrimental to the child. Accordingly, we affirm.

Factual and Procedural Background
I.C.C.G. was born on October 29, 1991, and at the time of birth resided with his parents in Jacksonville in the home of S.G., his paternal grandmother. C.S.G., the natural mother was a minor when the child was born. When the child was two years old, the natural mother, then 18 years old, moved to the home of her own mother, also in Jacksonville. I.C.C.G. remained in his paternal grandmother's home, and his parents consented to S.G. becoming the child's guardian. The parents were divorced by a judgment of dissolution entered in August 1993, by which S.G. was designated as the primary residential custodian. The mother did not appear in the dissolution proceeding, but she was awarded liberal and reasonable visitation by the judgment of dissolution. The natural mother ceased her sporadic visitation with I.C.C.G. in December 1993. She then moved from Jacksonville to Columbus, Georgia with her second husband, but returned to Jacksonville in January 1994.
In December 1995, the mother filed a petition for modification seeking primary residential custody of the child and support from the natural father. S.G. answered by denying that any material, substantial changes in circumstances had occurred which would justify modification. S.G. also sought to end visitation by the natural mother, which by then had recommenced, arguing that the visitations had been traumatic for the child and caused behavioral and other problems. Later, S.G. filed a petition to adopt the minor child.
Following a hearing, the trial court denied the petition for adoption. In a thoughtful order, the trial court found that the mother acted responsibly when giving the paternal grandmother legal guardianship of the child and that the grandmother did not prove by clear and convincing evidence that the natural *808 mother abandoned the child during the guardianship within the meaning of chapter 63, Florida Statutes. The trial court then granted modification, reasoning as follows:
[A]s difficult as it may seem to the Grandmother, the Grandmother has an extremely heavy burden to overcome to maintain custody of this minor child. The present status of the law grants superior rights to a natural parent who is not unfit or would not be a detriment to the welfare of the child.
Relying upon In re Marriage of Matzen, 600 So.2d 487 (Fla. 1st DCA 1992), the trial court ruled that custody could not be denied a natural parent in preference to a third party unless there is clear and convincing evidence that the parent abandoned the child or is, in some meaningful sense, an unfit parent, or that placing the child with the parent will be detrimental to the child's welfare. On the authority of In Re J.M.Z., 635 So.2d 134 (Fla. 1st DCA 1994), the trial court rejected the grandmother's argument that, pursuant to section 61.13(7), Florida Statutes, grandparents with custody of a child are now on equal standing with natural parents in a custody dispute. Accordingly, the trial court ordered that after a transition period custody is to be returned to the natural mother.

GrandparentParent Custody Dispute
This case involves the question of the standard to apply in a dispute between a parent and grandparent for custody of a minor child pursuant to section 61.13(7). The appellant argues that, under this statute, the court is required to consider the parent and grandparent on equal footing and award custody based strictly on the "best interests of the child." Because of the fundamental constitutional right of natural parents "to raise their children except in cases where the child is threatened with harm," Beagle v. Beagle, 678 So.2d 1271, 1276 (Fla.1996), we agree with the trial court that in a custody dispute between a natural parent and grandparent under section 61.13(7), custody should be granted to the natural parent unless it is demonstrated that such custody will be detrimental to the child. In re Guardianship of D.A. McW., 460 So.2d 368, 369-370 (Fla. 1984).
There is no doubt that the person with whom a child lives, especially when the child is young, is a significant figure to that child.[1] This would seem even more true when that custodian is a grandparent.[2] Furthermore, grandparent custody, especially when such custody has been in effect for some time, is a matter with more far-reaching implications than grandparent visitation, because custody often creates a bond not forged simply by visitation.[3]
The Florida Supreme Court addressed the standard applicable in determining a custody dispute between a grandparent and a natural parent in In re Guardianship of D.A. McW., *809 460 So.2d at 369-70. In D.A. McW., a natural father of a child born out-of-wedlock appealed a custody award to the maternal grandmother. In approving the Fourth District's reversal of the custody award, 429 So.2d 699 (Fla. 4th DCA 1983), the court explained the applicable standard as follows:
The district court correctly articulated the test to be applied in a custody dispute between two natural parents and distinguished it from the test applicable to a custody dispute between a natural parent and a third party. When a custody dispute is between two parents, where both are fit and have equal rights to custody, the test involves only the determination of the best interests of the child. When the custody dispute is between a natural parent and a third party, however, the test must include consideration of the right of a natural parent "to enjoy the custody, fellowship and companionship of his offspring.... This is a rule older than the common law itself." State ex rel. Sparks v. Reeves, 97 So.2d 18, 20 (Fla.1957). In Reeves we held that in such a circumstance, custody should be denied to the natural parent only when such an award will, in fact, be detrimental to the welfare of the child.
460 So.2d at 369-370. Following the D.A. McW. standard, we have held that
in a custody dispute between a natural parent and a third party (including grandparents), custody can be denied to the parent only when supported by clear and convincing evidence establishing that the parent has abandoned the child or is in some other meaningful sense an unfit parent, or that placing the child with the parent will be detrimental to the child's welfare.
Murphy v. Markham-Crawford, 665 So.2d 1093, 1094 (Fla. 1st DCA 1995); see also In re Marriage of Matzen, 600 So.2d at 488.

Constitutional Rights of Parents
Although the holdings in D.A. McW. and its progeny were based upon "the fundamental interest of natural parents in the care, custody and management of their children," 429 So.2d at 703, and upon the "strong public policy which exists in this state in favor of the natural family unit," 460 So.2d at 370 (quoting D.A. McW., 429 So.2d at 703-704), those decisions did not express such parental rights in constitutional terms. In addressing grandparent visitation issues under section 752.01, Florida Statutes, in Beagle v. Beagle, supra, and Von Eiff v. Von Eiff, 720 So.2d 510, 23 Fla. L. Weekly S583 (Fla. November 12, 1998), the Supreme Court has since recognized that the parents' right to raise their children has constitutional protection in both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the privacy provision of the Florida Constitution, article I, section 23.[4]Beagle, 678 So.2d at 1275; Von Eiff, 720 So.2d at 514, 23 Fla. L. Weekly at S585. The court explained that in adopting the explicit constitutional right of privacy in article I, section 23, Floridians "opted for more protection from governmental intrusion" than was afforded under the federal constitution. Beagle, 678 So.2d at 1275 (quoting Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 548 (Fla.1985)). Thus, "[t]he state constitutional right to privacy is much broader in scope, embraces more privacy interests, and extends more protection to those interests than its federal counterpart." Von Eiff, 720 So.2d at 514, 23 Fla. L. Weekly at S585.[5]
In Beagle, the court held that "the state may not intrude upon the parents' fundamental rights to raise their children except in cases where the child is threatened with *810 harm." Beagle, 678 So.2d at 1276. Further, in analyzing a statute that infringes on this parental right, the statute was required to "survive the highest level of scrutiny," the compelling state interest standard, Von Eiff, 720 So.2d at 514, 23 Fla. L. Weekly at S585, a standard the state can satisfy "when it acts to prevent demonstrable harm to a child." Id. (emphasis theirs; quoting Beagle, 678 So.2d at 1276). The Von Eiff court explained the policy reasons for rejecting a best interests analysis in visitation disputes involving natural parents and grandparents, as follows:
Besides the constitutional infirmity, there is an inherent problem with utilizing a best interest analysis as the basis for government interference in the private lives of a family, rather than requiring a showing of demonstrable harm to the child. It permits the State to substitute its own views regarding how a child should be raised for those of the parent. It involves the judiciary in second-guessing parental decisions. It allows a court to impose "its own notion of the children's best interests over the shared opinion of these parents, stripping them of their right to control in parenting decisions." Beagle, 678 So.2d at 1276 (quoting Hawk, 855 S.W.2d at 582).
Von Eiff, 720 So.2d at 516, 23 Fla. L. Weekly at S586.
In Beagle, the court found that "a judge cannot impose grandparent visitation upon an intact family." Beagle, 678 So.2d at 1272. The court, thus, expressly limited its holding "to only those situations in which a child is living with both natural parents, at least one natural parent objects to grandparent visitation, and no relevant matters are pending in the court system." Id. In Von Eiff, however, in which the maternal grandparents petitioned for visitation following the death of the child's mother, the court abandoned the "intact family" limitation explaining:
Although in Beagle we refer to the fact that the Beagles were an "intact" family, we based our decision in Beagle on the constitutionally protected privacy rights parents have in the rearing of their children.
* * * * * *
"[W]e are unable to discern any difference between the fundamental rights of privacy of natural parents in an intact family and the fundamental rights of privacy of a widowed parent."
Von Eiff, 720 So.2d at 515, 23 Fla. L. Weekly S586 (quoting Fitts v. Poe, 699 So.2d 348, 348-349 (Fla. 5th DCA 1997)). While the discussions of parental rights in Beagle and Von Eiff were in the context of visitation disputes, we find the rationale of those cases equally applicable to the custody dispute before us.

Section 61.13(7), Florida Statutes
The appellant argues that, by enacting subsection (7) of section 61.13 in 1993, the Legislature modified the standard adopted in D.A. McW. We cannot agree. Section 61.13(7) provides:
In any case where the child is actually residing with a grandparent in a stable relationship, whether the court has awarded custody to the grandparent or not, the court may recognize the grandparents as having the same standing as parents for evaluating what custody arrangements are in the best interest of the child.
As noted by the trial court, this court held in In Re J.M.Z., 635 So.2d at 135, that section 61.13(7) did not authorize grandparents to institute separate custody actions. There, we concluded that "subsection 7 merely grants standing to the grandparents to intervene in an existing chapter 61 proceeding for the purpose of determining custody of the minor child." Id.; see also Babb v. Begines, 701 So.2d 616, 617-618 (Fla. 4th DCA 1997). Similarly, we do not read subsection (7) as altering the existing case law, see D.A. McW., which establishes the appropriate standard to apply in a custody dispute between a natural parent and a grandparent.
Were we to read section 61.13(7) as requiring the application of a "best interests" standard when considering a custody dispute between a natural parent and a grandparent who has lived in a stable relationship with the child at issue, we would be interpreting the statute in direct conflict with the constitutional right of natural parents to raise their child free from governmental interference *811 absent a showing of harm to the child. See Beagle, 678 So.2d at 1275-1276, and Von Eiff, 720 So.2d at 515 - 516, 23 Fla. L. Weekly at S585-586. "If a statute may reasonably be construed in more than one manner, [we are] obligated to adopt the construction that comports with the dictates of the Constitution." Vildibill v. Johnson, 492 So.2d 1047, 1050 (Fla.1986). Interpreting section 61.13(7) in harmony with the privacy provision, we read this section to grant to a grandparent, who has previously resided with a child in a stable relationship, the right to intervene or be named as a party in a child custody proceeding under chapter 61. In such a proceeding, however, the court may not intervene in the parent-child relationship or consider whether grandparent custody is in the "best interests of the child," unless harm to the child or parental unfitness has been established. D.A. McW., 460 So.2d at 369-370; Matzen, 600 So.2d at 488; Murphy v. Markham-Crawford, 665 So.2d 1093, 1094 (Fla. 1st DCA 1995), rev. denied, 675 So.2d 928 (Fla. 1996).[6]
We recognize that the Second District in S.G. v. G.G., 666 So.2d 203, 205 (Fla. 2d DCA 1995), has interpreted section 61.13(7) as requiring the application of a "best interest of the child" standard in a custody dispute between a parent and a grandparent with whom the child had resided in a stable relationship. We note, however, that the decision in S.G. predates the Supreme Court's announcement of the constitutional parental rights in Beagle and Von Eiff and S.G. did not address any constitutional issues. Thus, with respect, we are not persuaded that S.G. has correctly interpreted section 61.13(7) in light of Beagle and Von Eiff. Therefore, we certify conflict with S.G. under article V, section 3(b)(3) of the Florida Constitution.
We also recognize that the Fourth District in Spence v. Stewart, 705 So.2d 996 (Fla. 4th DCA 1998), has ruled that in considering grandparent visitation in a paternity proceeding under section 61.13(2)(b)(2)(c), the court's "consideration of whether grandparent visitation is in the best interest of the child is not violative of the right to privacy." Id. at 998. In Spence, which predated the Supreme Court opinion in Von Eiff, the court distinguished Beagle as being limited to a proceeding for grandparent visitation involving "intact" family under section 752.01(1)(e). The Spence court also reasoned that the constitutional privacy right was inapplicable to parents in dissolution or paternity actions,
[b]ecause the parents have already abandoned their right of familial privacy by bringing their dispute before the court, the court's further consideration of whether grandparent visitation is in the best interest of the child is not violative of the right of privacy.
Spence, 705 So.2d at 998.
With respect, we are not persuaded that the analysis in Spence should apply to section 61.13(7). First, we conclude that the "intact family" limitation expressed in Beagle, 678 So.2d at 1272, on which Spence relies, has no vitality after Von Eiff. Von Eiff, 720 So.2d at 516, 23 Fla. L. Weekly at S586. Thus, the constitutional protections enunciated in Beagle and Von Eiff are applicable in dissolution and paternity actions. See Williams v. Spears, 719 So.2d 1236, 1241-1242 (Fla. 1st DCA 1998). Second, we share Judge Klein's concerns about the rationale in Spence, because it seems based on the premise that the exercise of the parents' constitutional right of access to the courts under article I, section 21, Florida Constitution, creates an implied waiver or abandonment of the constitutional *812 familial right to privacy under article I, section 23, Florida Constitution. Brunetti v. Saul, 724 So.2d 142, 144, 23 Fla. L. Weekly D2619, D2620 (Fla. 4th DCA 1998)(Klein, J., concurring). Finally, in our view, there would seem to be no logical reason for concluding that section 61.13(7), if it did require a "best interest" test, would satisfy the "compelling state interest" requirement when this requirement was not satisfied in section 752.01. Beagle and Von Eiff.
In the instant case, the grandmother was a party to the custody proceeding in which the lower court expressly considered the fitness of the mother and found her a fit parent. We find competent and substantial evidence in the record to support that finding. We, therefore, affirm the order under appeal.
Mindful of the disappointment the grandmother will experience as a result of our ruling, we reiterate what the trial court has stated: "The Court finds that the Grandmother has had a positive impact on the child and she is a responsible person, well thought of by the [natural mother], and has acted in the best interest of the minor child." As the Supreme Court said in Beagle, "our determination today is not a comment on the desirability of interaction between grandparents and their grandchildren." Beagle, 678 So.2d at 1272. Neither is our ruling based upon a lack of sensitivity or understanding of the role played by this grandmother in the life of this child. In the eyes of the law, the grandmother's interest in continuing the custody of her grandchild must give way to the constitutional right of privacy of the natural mother to raise her child without governmental interference. Beagle and Von Eiff. Where, as here, the natural parent has not abandoned the child or been found an unfit parent or placement with the natural parent been found detrimental to the child's welfare, a court is without the authority to impose its own view of the child's best interest.
AFFIRMED.
BOOTH AND JOANOS, JJ., CONCUR.
NOTES
[1] See J. Goldstein, A. Freud, and A. Solnit, Beyond the Best Interests of the Child (1973) at 12-13, who explain:

Unlike adults, children have no psychological conceptions of relationship by blood-tie until quite late in their development. For the biological parents, the facts of having engendered, borne, or given birth to a child produce an understandable sense of preparedness for proprietorship and possessionness. These considerations carry no weight with children who are emotionally unaware of the events leading to their births. What registers in their minds are the day-to-day interchanges with the adults who take care of them and who, on the strength of these, become the parent figures to whom they are attached.
[2] As the New Jersey Supreme Court observed, "[i]t is common human experience that the concern and interest grandparents take in the welfare of their grandchildren far exceeds anything explicable in purely biological terms. A very special relationship often arises and continues between grandparents and grandchildren." Mimkon v. Ford, 66 N.J. 426, 332 A.2d 199, 204 (N.J.1975).
[3] In such an event, the custodian may become a so-called "psychological parent."

A psychological parent develops a parent-child relationship with the child through day-to-day interaction, companionship, and emotional caring for the child. This relationship fulfills the child's psychological needs for a parent, in addition to providing for the child's physical necessities of daily living. Once this bond forms, breaking up the relationship, psychologists believe, will have serious and harmful effects on the child's emotional development.
Suzette M. Harris, Note, Biological Parents v. Third Parties: Whose Right to Child Custody is Constitutionally Protected?, 20 Ga. L.Rev. 705, 745 n. 3. (1986).
[4] Article I, section 23 of the Florida Constitution provides, in pertinent part, that "[e]very natural person has the right to be let alone and free from governmental intrusion into his private life."
[5] Courts in jurisdictions without the broader guarantee of privacy included in the Florida Constitution, with one exception, see Brooks v. Parkerson, 265 Ga. 189, 454 S.E.2d 769, 773 (Ga. 1995), cert. denied, Parkerson v. Brooks, 516 U.S. 942, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995), rev. granted, ______, have rejected constitutional challenges to grandparent visitation statutes based solely upon Fourteenth Amendment grounds. See In re Petition of Santoro, 578 N.W.2d 369, 375-376 (Minn.App.1998), and cases cited therein.
[6] In Richardson v. Richardson, ___ So.2d ____, 1999 WL 1529, Case No. 98-1240 (Fla. 1st DCA January 5, 1999), a panel of this court held that section 61.13(7), Florida Statutes (1997), was unconstitutional insofar as it authorized an evaluation of a grandparents' custody request solely on a best interest of the child standard. In Richardson, the trial court had transferred custody from the natural mother to the child's grandparents pursuant to section 61.13(7) based on an application of the best interest standard. The parties in Richardson made no argument regarding an interpretation of section 61.13(7) which might have avoided an unconstitutional application of the statute in that case. By contrast, in the instant case, the appellee argued below and on appeal that under section 61.13(7), while the statute granted the grandparents standing to intervene, custody could be awarded to grandparents only if the parents were first found unfit and the trial court applied the statute in a manner that was consistent with the privacy provision of the Florida Constitution. Because of the application of section 61.13(7) in the instant case, unlike the Richardson panel, we find it unnecessary to address its constitutionality as applied.