739 So.2d 650 (1999)
Sharon D. LONON and Jerre Gene Lonon, Appellants,
v.
Stephen James FERRELL and Jacqualyn Marie Ferrell, Appellees.
No. 98-01973.
District Court of Appeal of Florida, Second District.
July 30, 1999.
*651 Jeffrey D. Grabel of Bay Area Legal Services, Inc., Dade City, for Appellants.
Larry S. Hersch of Hersch & Kelly, P.A., Dade City, for Appellees.
NORTHCUTT, Judge.
Mr. and Mrs. Lonon are the biological grandparents of a five-year old child, B.F. Mrs. Ferrell is B.F.'s natural mother. She was previously married to the Lonons' son, who is the child's biological father. They were divorced after B.F. was born, and the mother married Stephen Ferrell. The Lonons' son consented to Mr. Ferrell's adoption of B.F., which occurred in November 1997. Thereafter, the grandparents petitioned for visitation with the child. They did not allege any harm or threat to the child, but merely contended that visitation with them was in the child's best interest. The circuit court dismissed their action on the ground that sections 752.01(1)(b) and (e), Florida Statutes (1997), upon which the petition was based, are facially unconstitutional. The Lonons challenge the court's ruling in this appeal. We agree with the circuit court's decision and affirm.
In Beagle v. Beagle, 678 So.2d 1271 (Fla. 1996), our supreme court set out a detailed history of the Florida grandparental visitation statutes.[1] The Beagle court held that section 752.01(1)(e) was facially unconstitutional, explaining that the State "may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm." Id. at 1276. The decision, however, focused on the narrow question of whether the State had the right to impose grandparental visitation in "an intact family." Id.
The supreme court extended the Beagle reasoning to hold section 752.01(1)(a) unconstitutional in Von Eiff v. Azicri, 720 So.2d 510 (Fla.1998). See also Coryell v. Morris, 730 So.2d 373 (Fla. 2d DCA 1999). As the court in Von Eiff noted, because privacy is a fundamental right, a statute that infringes on that right is subject to the most stringent standard of review, the "compelling state interest" test. It held that section 752.01(1)(a) failed the test because the circuit court must order visitation based on the "best interests" of the child, "without first requiring proof of demonstrable harm to the child." 720 So.2d at 514. In doing so, it receded from any implication in Beagle that the constitutionally protected privacy rights to raise a child were limited to parents living as "an intact family." Id. at 515.
The Lonons' briefs in this case were filed before the supreme court's decision in Von Eiff. They attempt to distinguish Beagle on the ground that because Mrs. Ferrell and the child's biological father used the judicial process to dissolve *652 their marriage, they granted the court system decision-making authority regarding the best interests of B.F. The Fourth District adopted a similar position in Spence v. Stewart, 705 So.2d 996, 998 (Fla. 4th DCA 1998). Spence was decided before Von Eiff, and relied somewhat on the "intact family" language in Beagle. We disagree with Spence, and instead agree with the First District's conclusion in S.G. v. C.S.G., 726 So.2d 806, 811 (Fla. 1st DCA 1999), that the "intact family" limitation in Beagle has no vitality after Von Eiff. Thus, the constitutional protections announced in Beagle apply in dissolution actions. Id. In so holding, the S.G. court rejected the reasoning in Spence that the constitutional privacy right did not apply when parents had abandoned the right by bringing their dispute before the court. We agree with S.G.; a divorced natural parent, such as Mrs. Ferrell, should have no lesser privacy rights than a married or widowed natural parent.[2] We hold that section 752.01(1)(b) is facially unconstitutional for the same reasons that the Von Eiff and Beagle courts held sections 752.01(1)(a) and (e) unconstitutional.
We also note that in an analogous factual situation, that is, a grandparent seeking visitation with a child born out-of-wedlock under section 752.01(1)(d), the Fourth District distinguished its own decision in Spence. See Brunetti v. Saul, 724 So.2d 142 (Fla. 4th DCA 1998), review granted, No. 94,843, 735 So.2d 1287 (Fla.1999). The Brunetti court limited Spence to situations where the grandparents sought visitation in a pending paternity proceeding. Because no proceeding was pending in that case, the court held that the grandparents' right to visitation rested solely on the provisions of section 752.01(1)(d), which the court held unconstitutional under the privacy right enunciated in Von Eiff. See Brunetti, 724 So.2d at 143. Applying the Brunetti reasoning to this case, there is no pending dissolution proceeding. Moreover, the circuit court does not have continuing jurisdiction over child custody issues because the Lonons' son consented to the child's adoption by Mr. Ferrell. Cf. S.G. v. G.G., 666 So.2d 203, 204 (Fla. 2d DCA 1995) (noting in custody action by grandparents that the court had continuing jurisdiction to enter orders affecting the children's custody). Thus, the Lonons' asserted rights to visitation arise solely from the unconstitutional provision of section 752.01(1)(b).[3]
The adoption provides yet another basis to deny the Lonons' visitation request. As the circuit court found, under the adoption statutes the Lonons are statutory strangers to the child. See § 63.172(1)(b), Fla. Stat. (1997). But they contend that section 752.07, Florida Statutes (1997),[4] abrogates the absolute terms of section 63.172 by providing for survival of grandparents' rights to visitation when a *653 stepparent adopts a child. We disagree. The language in section 752.07 is conditional on the grandparents having rights to visitation under section 752.01. We have concluded that a divorced parent has the same privacy rights as a widowed or married parent. Thus, the Lonons have no right to visitation under section 752.01 in the face of Mrs. Ferrell's objection.[5] Mr. Ferrell's adoption of B.F. cannot provide rights under section 752.07 that do not exist under section 752.01(b).
Moreover, we note that in Von Eiff, a stepparent adoption had occurred. While the court did not specifically comment on the effect of section 752.07, it did conclude that the stepparent adoption in that case created the same relation between the adopted child and the adoptive parent that would have existed if the child were the adoptive parent's blood descendant. Von Eiff, 720 So.2d at 516 (citing § 63.172(1)(c), Fla. Stat. (1993)). The court noted that the remarriage and adoption had created a new family. In the face of this discussion, we refuse to read section 752.07 as a limitation on section 63.172(1). Moreover, after the holding in Von Eiff, we question the viability of the language in section 752.07 that prescribes a "best interest of the child" standard.
In summary, we hold that section 752.01(1)(b) is facially unconstitutional. We affirm the circuit court's order dismissing the Lonons' petition.
CAMPBELL, A.C.J., and STRINGER, J., Concur.
NOTES
[1] The relevant portion of the 1997 statute states:

752.01 Action by grandparent for right of visitation; when petition shall be granted.
(1) The court shall, upon petition filed by a grandparent of a minor child, award reasonable rights of visitation to the grandparent with respect to the child when it is in the best interest of the minor child if:
(a) One or both parents of the child are deceased;
(b) The marriage of the parents of the child has been dissolved;
(c) A parent of the child has deserted the child;
(d) The minor child was born out of wedlock and not later determined to be a child born within wedlock as provided in s. 742.091; or
(e) The minor is living with both natural parents who are still married to each other whether or not there is a broken relationship between either or both parents of the minor child and the grandparents, and either or both parents have used their parental authority to prohibit a relationship between the minor child and the grandparents.
[2] Our agreement with S.G. v. C.S.G., 726 So.2d 806 (Fla. 1st DCA 1999), is limited to the issue of grandparental visitation. The S.G. court also specifically disagreed with our opinion in S.G. v. G.G., 666 So.2d 203 (Fla. 2d DCA 1995), on the issue of what standard should be applied when a grandparent with whom the child has resided in a stable relationship seeks custody of the child under section 61.13(7), Florida Statutes. That issue is not before us in this appeal, and this opinion should not be read as receding from our decision in S.G. v. G.G. on that point.
[3] Because the facts in this case fall squarely within the majority holding in Brunetti v. Saul, 724 So.2d 142 (Fla. 4th DCA 1998), we need not reach Judge Klein's concurrence to analogize the Brunetti reasoning. We do note, however, that we share his concerns about the rationale in Spence v. Stewart, 705 So.2d 996 (Fla. 4th DCA 1998), because it seems to be based on the notion that parents can waive their constitutional rights of privacy by exercising their constitutional right of access to courts. See also S.G. v. C.S.G., 726 So.2d at 811.
[4] 752.07 Effect of adoption of child by stepparent on right of visitation; when right may be terminated.

When there is a remarriage of one of the natural parents of a minor child for whom visitation rights may be or may have been granted to a grandparent pursuant to s. 752.01, any subsequent adoption by the stepparent will not terminate any grandparental rights. However, the court may determine that termination of such visitation rights is in the best interest of the child and rule accordingly, after affording the grandparents an opportunity to be heard.
[5] The supreme court has made it clear that only one parent need object to grandparental visitation. See Von Eiff v. Azicri, 720 So.2d 510, 515 (Fla.1998) (explaining that "the State could not force grandparent visitation against the `express wishes' of Philip Von Eiff before the death of the biological mother"); Beagle v. Beagle, 678 So.2d 1271 (Fla.1996) (addressing whether grandparent visitation could be compelled "against the express wishes of at least one parent"). We note that both Mr. and Mrs. Ferrell objected to visitation in this case. We focus on Mrs. Ferrell's objection only to show that she could have refused visitation both before and after her marriage to Mr. Ferrell.