823 So.2d 316 (2002)
Lori A. LAMARITATA, Appellant/Cross-Appellee,
v.
Danny A. LUCAS, Appellee/Cross-Appellant.
No. 2D01-3293.
District Court of Appeal of Florida, Second District.
August 16, 2002.
*317 Doris A. Bunnell, Bradenton, for Appellant/Cross-Appellee.
Thomas S. Hudson, Sarasota, for Appellee/Cross-Appellant.
BLUE, Chief Judge.
Although the parties raise numerous issues on appeal and cross-appeal, this is a simple case that can be resolved in a one-sentence opinion, to wit: Danny A. Lucas is a sperm donor, not a parent, and has no parental rights; thus the court erred in establishing a visitation schedule. Unfortunately for the parties, it does not appear that the attorneys ever seemed to understand this principle[1] and thus assisted the trial court to the ruling we reverse. There has been protracted, unnecessary litigation in this case, including a prior visit to this court which should have ended the controversy.
In 1998, on certiorari review of an order for paternity tests in a paternity action brought by Danny A. Lucas against Lori A. Lamaritata, this court issued a clear mandate for the trial court to determine the applicability of the sperm donor statute and the validity of the parties' contract before proceeding on any issues regarding the rights of Mr. Lucas vis-a-vis the children of Ms. Lamaritata. Mr. Lucas had convinced the trial court to order paternity tests so that he might avoid the cost of litigation if he was not actually the biological father of Ms. Lamaritata's children. Despite the dictates of this court's opinion, the parties returned to the trial court, stipulated to paternity testing, then litigated issues regarding visitation, child support, and the best interests of the children. Because the parties and the trial court failed to heed this court's decision, they have suffered the exact harm they feared *318 by unnecessarily litigating issues that are not relevant to the core issue in this case.
Ms. Lamaritata appeals a supplemental final judgment that grants to Mr. Lucas (1) unsupervised, overnight visitation on alternating weekends and visitation on the day after Christmas and on Father's Day; (2) telephone calls from the children when they are with their mother; and (3) the right to confer with the children's teachers and attend school events and activities. At the same time, the supplemental final judgment held that Mr. Lucas was foreclosed from all parental rights except those set forth above and foreclosed from bringing the paternity action. The trial court also denied Ms. Lamaritata's motion to escrow child support, which she sought to protect the children's right to support in the unlikely event Mr. Lucas was given parental rights.
A brief statement of the pertinent facts was set forth in this court's prior opinion.
D.A.L. (donor) and L.A.L. (recipient) entered into a contract whereby the donor would provide sperm to recipient with the expectation that she would become pregnant through artificial insemination and deliver offspring. The agreement provided that if childbirth resulted, the donor would have no parental rights and obligations associated with the delivery, and both parties would be foreclosed from establishing those rights and obligations by the institution of an action to determine the paternity of any such child or children. Notwithstanding the clear language of the contract, after the recipient gave birth to twin boys the donor filed an action in circuit court seeking to establish paternity and an award of those rights associated with it. In defense of the action, the recipient alleged that the contract barred such an action, that section 742.14, Florida Statutes (1997), disallowed sperm donors any parental rights, and that the donor was not in fact the biological father of the children.
L.A.L. v. D.A.L., 714 So.2d 595, 596 (Fla. 2d DCA 1998). This court quashed the order for paternity testing and directed the circuit court to proceed in a manner consistent with this court's opinion.
In the opinion, after considering the express language of section 742.14, Florida Statutes (1997),[2] this court held: "Should the trial court decide that this statute is constitutionally applicable to the facts in the underlying litigation, the donor, whether or not he is scientifically determined to be the biological parent of these boys, will be foreclosed from all parental rights, including his access to the children." 714 So.2d at 596 (emphasis added). Likewise, after considering the express language of the parties' contract, this court held that "if the clear intent of the parties to this agreement is enforced by the trial court," Mr. Lucas waived his right to institute a paternity proceeding. 714 So.2d at 597.
In an attempt to avoid application of the statute, Mr. Lucas now argues that he is not a sperm donor. Sperm donor is not defined in the statute. The contract, however, calls Mr. Lucas "donor" and indicates that sperm is the only donation required of him. Thus we easily conclude that Mr. Lucas qualifies as a sperm donor.
We just as easily reject Mr. Lucas's argument that he and Ms. Lamaritata constitute a "commissioning couple." Commissioning couple is defined in the *319 statute as "the intended mother and father of a child who will be conceived by means of assisted reproductive technology using the eggs or sperm of at least one of the intended parents." § 742.13(2). There are no facts to show that Mr. Lucas and Ms. Lamaritata have any type of relationship that would fall under the rubric of "couple." Further, they did not commission or contract to jointly raise the children as mother and father. Rather, they joined forces solely for the purpose of artificially inseminating Ms. Lamaritata, an intent clearly set forth in the parties' contract.
A person who provides sperm for a woman to conceive a child by artificial insemination is not a parent. Both the contract between the parties and the Florida statute controlling these arrangements provide that there are no parental rights or responsibilities resulting to the donor of sperm. See § 742.14. If the sperm donor has no parental rights, the sperm donor is a nonparent, a statutory stranger to the children.
Even though the parties entered into subsequent stipulations, purportedly to give visitation rights to this nonparent, we conclude that agreement is not enforceable. There are numerous Florida cases holding that nonparents are not entitled to visitation rights. See, e.g., O'Dell v. O'Dell, 629 So.2d 891, 891 (Fla. 2d DCA 1993) (reversing visitation for a divorced man and his stepson, noting that "[t]his court has repeatedly reversed orders giving visitation rights to nonparents"); Kazmierazak v. Query, 736 So.2d 106, 106 (Fla. 4th DCA 1999) (holding that "psychological parent" was not entitled to custody or visitation); Meeks v. Garner, 598 So.2d 261 (Fla. 1st DCA 1992); cf. Lonon v. Ferrell, 739 So.2d 650, 652 (Fla. 2d DCA 1999) (holding that biological grandparents were "statutory strangers" to children following their adoption by stepfather; statute authorizing grandparent visitation violated parent's constitutional right to privacy). Contracts purporting to grant visitation rights to nonparents are unenforceable. Taylor v. Kennedy, 649 So.2d 270, 271-72 (Fla. 5th DCA 1994) ("Florida courts do not recognize a claim for specific performance of a contract for visitation in favor of a non-parent."). Therefore, pursuant to the contract's severability clause,[3] we sever the unenforceable portion of the contract purporting to give visitation rights to Mr. Lucas.
The sperm donor here has no legal parental rights, and this case should have been dismissed after our prior opinion. Accordingly, we reverse the supplemental final judgment and remand to the trial court for the entry of a final judgment declaring that Mr. Lucas has no enforceable parental rights.
Reversed and remanded with directions.
GREEN and COVINGTON, JJ., Concur.
NOTES
[1] At one point in time, Ms. Lamaritata was represented by counsel that recognized the principle, but for reasons that are not clear from the record she only remained in the case for a very short period of time.
[2] Section 742.14 provides in pertinent part: "The donor of any egg, sperm, or preembryo, other than the commissioning couple or a father who has executed a preplanned adoption agreement under s. 63.212, shall relinquish all maternal or paternal rights and obligations with respect to the donation or the resulting children."
[3] The contract states: "Each clause of this AGREEMENT is separate and divisible from the others, and should a court refuse to enforce one or more clauses of this AGREEMENT, the others are still valid in full force."