KELLY, Judge.
A.A.B., the biological mother of C.D.B., appeals from the final judgment of paternity which grants B.O.C., the biological father, parental rights with respect to the child, who was conceived through artificial insemination. She also appeals from the orders establishing a parenting plan and child support. Because under section 742.14, Florida Statutes (2002), B.O.C. is a sperm donor, and therefore has no parental rights with respect to C.D.B., we reverse.
The appellant, A.A.B., and her partner, S.C., lived together in a committed relationship. They decided to raise a child together and asked S.C.’s brother, appellee B.O.C., to donate his sperm to be used to impregnate A.A.B. B.O.C. agreed, and after three attempts at performing “do-it-yourself’ artificial insemination, the parties were successful at conceiving a child. A.A.B. and S.C. assumed sole responsibility for all prenatal decisions and expenses. When C.D.B. was born in 2002, B.O.C. lived in another state and did not assume a parental role with the child. About three years later, A.A.B. and S.C. ended their relationship. Following the breakup, A.A.B. and S.C. shared rotating custody of the child; however, the relationship deteriorated and A.A.B. refused to allow S.C. to have any further contact with the child.
B.O.C. then filed suit to establish paternity and visitation with C.D.B. A.A.B. disputed that B.O.C. had any parental rights because he had agreed to be a sperm donor only so that A.A.B. and S.C. could have a child together. A.A.B. argued that under section 742.14,[1] B.O.C. relinquished all paternal rights and obligations with respect to C.D.B.
Following a hearing, the trial court found that because the parties employed a “do-it-yourself’ procedure to impregnate A.A.B., rather than a clinical one, section 742.14 did not apply. The court declined to recognize the oral agreement between the parties that B.O.C. was to be merely a sperm donor. Consequently, the court found that B.O.C. had parental rights and it established a parenting plan to provide for visitation and child support. In this appeal, A.A.B. argues that the trial court erred in failing to find that B.O.C. was a sperm donor within the meaning of section 742.14. We agree.
The issue presented in this appeal is whether section 742.14 applies to deny parental rights to a sperm donor whose identity is known to the biological mother and where insemination occurs outside of a laboratory setting, but not in the “old-fashioned way.” Cf. Budnick v. Silverman, 805 So.2d 1112, 1114 (Fla. 4th DCA 2002) (holding that a father who impregnated his child’s mother in “the usual and customary manner” after signing a preconception agreement to forego parental responsibilities was not merely a sperm donor and thus was not statutorily bound to give away his parental rights).
A court’s interpretation of a statute “is a question of law subject to de novo review.” Daniels v. Fla. Dep’t of Health, 898 So.2d 61, 64 (Fla.2005). A plain reading of section 742.14 reveals that the donor *763 of any sperm shall relinquish all paternal rights and obligations with respect to the resulting children. The only exceptions in the statute are when (1) “a commissioning couple” employs “assisted reproductive technology”[2] or (2) a father has executed a preplanned adoption agreement under the adoption statutes.
This court in Lamaritata v. Lucas, 823 So.2d 316 (Fla. 2d DCA 2002), upheld a written agreement that a sperm donor would relinquish any parental rights or obligations to a child conceived by artificial insemination. The parties entered into the written contract before the insemination; however, after the birth, the donor filed an action to establish paternity. In defense to his filing, the mother alleged that section 724.14 did not allow the donor any parental rights. In holding that Mr. Lucas was merely a sperm donor and therefore had no parental rights, this court stated:
A person who provides sperm for a woman to conceive a child by artificial insemination is not a parent. Both the contract between the parties and the Florida statute controlling these arrangements provide that there are no parental rights or responsibilities resulting to the donor of sperm. See § 742.14. If the sperm donor has no parental rights, the sperm donor is a nonparent, a statutory stranger to the children.
Id. at 319.
Mr. Lucas asserted that he retained parental rights because he and the mother were a “commissioning couple,” and thus the exception to the sperm donor statute applied. This court rejected his argument stating:
There are no facts to show that Mr. Lucas and Ms. Lamaritata have any type of relationship that would fall under the rubric of “couple.” Further, they did not commission or contract to jointly raise the children as mother and father. Rather, they joined forces solely for the purpose of artificially inseminating Ms. Lamaritata, an intent clearly set forth in the parties’ contract.

Id.

The facts in Lamaritata are similar to the facts in this case. A.A.B. and B.O.C.’s sister, S.C., entered into an agreement with B.O.C. whereby B.O.C. would provide the sperm to artificially inseminate A.A.B. in the hope of conceiving a child that S.C. and A.A.B. could raise together. Although the agreement was not reduced to writing, the parties all abided by its terms for over five years until the relationship between A.A.B. and S.C. soured. B.O.C. provided no financial support either before or after the birth, nor was he involved in any decisions concerning the welfare of the child. Although B.O.C. occasionally visited the child, B.O.C. did not assert any parental rights over C.D.B. until his sister’s relationship with the child was jeopardized.
As the trial court in this case correctly found, A.A.B. and B.O.C. were not a “commissioning couple.” See § 742.13(2). A.A.B. testified that she was in a committed relationship with B.O.C.’s sister and *764 had no interest in a relationship with a male. The trial court specifically found in the Final Judgment of Paternity that it was the intent of the parties “that [B.O.C.] would provide the donor sperm with which [A.A.B.] became pregnant and that the child would be raised by [A.A.B.] and [B.O.C.’s] sister as the child’s Parents.”
In a factually similar Texas case, In re H.C.S., 219 S.W.3d 33 (2006), a mother challenged the standing of a sperm donor to pursue a proceeding to establish the paternity of a child conceived through artificial insemination. The mother and her same-sex partner had asked the partner’s brother to act as a sperm donor so that the couple could have a child together. The parties did not put the terms of the agreement as to the status of the donor in writing. After the mother and her partner ended their relationship, the sperm donor filed suit to adjudicate his parental rights. The court looked to the plain language of the Texas statute and determined that the sperm donor lacked standing to pursue the paternity action. See Tex. Fam.Code Ann. § 160.702 (Vernon Supp.2006) (“A donor is not a parent of a child conceived by means of assisted reproduction.”).[3]
The “do-it-yóurself” manner in which the artificial insemination was conducted does not alter the fact that B.O.C. was a sperm donor under section 742.14. The statute does not require that the artificial insemination be performed in a clinical setting to apply. Compare McIntyre v. Crouch, 98 Or.App. 462, 780 P.2d 239 (1989) (holding that, where the donor non-paternity statute did not explicitly reference physician involvement, the statute applied even though the sperm was not provided to a physician), with C.O. v. W.S., 64 Ohio Misc.2d 9, 639 N.E.2d 523 (1994) (holding that the failure to comply with the statutory requirement of physician involvement prevented the mother from claiming that the sperm donor was not a legal parent under the donor nonpaternity statute).[4]
Because B.O.C. was a sperm donor he relinquished his paternal rights and obligations to C.D.B. Accordingly, we reverse the final judgment of paternity and the orders establishing visitation and child support.
Reversed.
CASANUEVA and LaROSE, JJ., Concur.

. Section 742.14, provides, in pertinent part,
The donor of any egg, sperm, or preem-bryo, other than the commissioning couple or a father who has executed a preplanned adoption agreement under s.63.212, shall relinquish all maternal or paternal rights and obligations with respect to the donation or the resulting children.

. Section 742.13, provides the following definitions:
(1) "Assisted reproductive technology” means those procreative procedures which involve the laboratory handling of human eggs or preembryos, including, but not limited to, in vitro fertilization embryo transfer, gamete intrafallopian transfer, pronuclear stage transfer, tubal embiyo transfer, and zygote intrafallopian transfer.
(2) "Commissioning couple” means the intended mother and father of a child who will be conceived by means of assisted reproductive technology using the eggs or sperm of at least one of the intended parents.

. See also Unif. Parentage Act § 702 (amended 2000), 9B U.L.A. 355 (2001) ("A donor is not a parent of a child conceived by means of assisted reproduction.”).

. "[W]hereas the sperm donor for a clinical artificial insemination is usually anonymous, the donor in a do-it-yourself insemination is likely to be known to the recipient. This can result in bitter and complicated custody disputes, especially in those states that have not adopted legislation clarifying the rights and duties of the various parties to artificial insemination.” Reproductive Technology & the Procreation Rights of the Unmarried, 98 Harv. L.Rev. 669 n. 16 (1985). (Citations omitted).