678 So.2d 1271 (1996)
Dewey Keith BEAGLE, et al., Petitioners,
v.
Roy Thomas BEAGLE, et al., Respondents.
No. 85971.
Supreme Court of Florida.
August 22, 1996.
Wm. J. Sheppard and Richard W. Smith of Sheppard and White, P.A., Jacksonville, and *1272 Stephen Donohoe, Jacksonville, for Petitioners.
Nancy N. Nowlis, Jacksonville, for Respondents.
Ross Baer, Sue-Ellen Kenny and Jeanine Germanowicz, West Palm Beach, for amicus curiae, Sayge Schreckengost and Scott Schreckengost and The Legal Aid Society of Palm Beach County, Inc.
Andrew H. Kayton, Legal Director, Miami, for amicus curiae, American Civil Liberties Union Foundation of Florida.
OVERTON, Justice.
We have for review Beagle v. Beagle, 654 So.2d 1260 (Fla. 1st DCA 1995), concerning the sensitive family law issue of grandparental visitation rights. Specifically, we address only the 1993 amendment to section 752.01 of the Florida Statutes. Prior to such modification, the statute at issue allowed the award of grandparental visitation in four other distinct family situations. The constitutionality of those four paragraphs is not at issue in this proceeding. We limit our holding to only those situations in which a child is living with both natural parents, at least one natural parent objects to grandparental visitation, and no relevant matters are pending in the court system. See 752.01(1)(e), Fla. Stat. (1995). In such cases, we find that a judge cannot impose grandparental visitation upon an intact family. We emphasize that our determination today is not a comment on the desirability of interaction between grandparents and their grandchildren. We focus exclusively on whether it is proper for the government, in the absence of a demonstrated harm to the child, to force such interaction against the express wishes of at least one parent in an intact family.
The relevant paragraph is challenged as violative of the privacy guarantees in both the Florida Constitution and the United States Constitution. The First District Court of Appeal concluded that the paragraph did not offend either constitution. The district court did, however, certify the following as being a question of great public importance:
IS SECTION 752.01(1)(e), FLORIDA STATUTES (1993), FACIALLY UNCONSTITUTIONAL BECAUSE IT CONSTITUTES IMPERMISSIBLE STATE INTERFERENCE WITH PARENTAL RIGHTS PROTECTED BY EITHER ARTICLE I, SECTION 23, OF THE FLORIDA CONSTITUTION OR THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION?
Id. at 1263. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed, we disagree with the district court majority and answer the certified question in the affirmative. We find that the challenged paragraph infringes upon the rights of parents to raise their children free from government intervention. The paragraph's major flaw is its failure to require a showing of harm to the child prior to any award of any grandparental visitation rights. The absence of such harm requirement results in the State being unable to satisfy the compelling interest standard announced by our decisions construing article I, section 23, of the Florida Constitution. Consequently, section 752.01(1)(e) must be stricken as facially unconstitutional. Our resolution of this issue under the Florida Constitution moots the federal claim. We emphasize that the inadequacy of the best interest test in this limited circumstance does not change or modify existing principles regarding the use of that test in other family law contexts.

History
Before proceeding, we briefly outline the historical development of the Florida grandparental visitation statute. First, in 1978, the legislature modified section 61.13(2)(b) of the Florida Statutes. The relevant language read:
The court may award the grandparents visitation rights of a minor children [sic] if it is deemed by the court to be in the child's best interest. Nothing in this section shall be construed to require that grandparents be made parties or given notice of dissolution pleadings or proceedings, nor shall such grandparents have legal *1273 standing as "contestants" as defined in s. 61.1306.
§ 61.13(2)(b), Fla. Stat. (Supp.1978). The modification quoted above was not the only action concerning grandparental visitation rights taken by the legislature in 1978. The following, contained in section 68.08, was also enacted:
Any court of this state which is competent to decide child custody matters shall have jurisdiction to award the grandparents of a minor child or minor children visitation rights of the minor child or children upon the death of or desertion by one of the minor child's parents if it is deemed by the court to be in the minor child's best interest.
§ 68.08, Fla. Stat. (Supp.1978).
Second, in 1984 the legislature consolidated the grandparental visitation provisions in chapter 752 of the Florida Statutes. That chapter was titled "Grandparental Visitation Rights." It included a procedure for the granting of grandparental visitation rights in situations: (1) where one or both parents of the child are deceased,[1] (2) where the marriage of the child's parents has been dissolved,[2] or (3) where a parent of the child has deserted the child.[3] Further, the legislature explicitly limited the chapter by refusing to extend its scope to situations in which a child is adopted unless the adoption is by a stepparent.[4]
Third, in 1990, the legislature added guidelines with which the courts might determine the best interest of the child.[5] In that same year, the legislature added a section that requires mediation, if such services are available in a given circuit, in cases where families cannot internally resolve their differences and a petition for grandparental visitation rights is filed.[6]
Finally, in 1993, the challenged paragraph was added authorizing the award of grandparental visitation rights in situations where the child lives within an intact family.[7] For a full understanding of the challenged paragraph, we set forth subsection one in its entirety with the challenged paragraph underlined.
(1) The court shall, upon petition filed by a grandparent of a minor child, award reasonable visitation rights of visitation to the grandparent with respect to the child when it is in the best interest of the minor child if:
(a) One or both parents of the child are deceased;
(b) The marriage of the parents of the child has been dissolved;
(c) A parent of the child has deserted the child;
(d) The minor child was born out of wedlock and not later determined to be a child born within wedlock as provided in s. 742.091; or
(e) The minor is living with both natural parents who are still married to each other whether or not there is a broken relationship between either or both parents of the minor child and the grandparents, and either or both parents have used their parental authority to prohibit a relationship between the minor child and the grandparents.
752.01(1), Fla. Stat. (1995)(emphasis added).

Facts
The facts in this case are simple. Roy and Sharron Beagle (the grandparents) filed a petition in the trial court for visitation rights with their granddaughter, Amber Beagle (the child). Dewey and Melissa Beagle (the parents) opposed the award of visitation rights and moved to dismiss the grandparents' petition. At the time of the grandparents' petition, the parents were living together with the child as an intact family. The trial court granted the parents' motion to dismiss, finding that section 752.01(1)(e) violated the parents' *1274 right to privacy under article I, section 23, of the Florida Constitution. The district court of appeal reversed. It relied heavily on its prior decision in Sketo v. Brown, 559 So.2d 381 (Fla. 1st DCA 1990). In Sketo, the district court addressed the paragraph in the grandparental visitation statute that allows an award of grandparental visitation rights in situations where a parent is deceased. In that case, the district court ruled that the paragraph at issue was not violative of article I, section 23 of the Florida Constitution. In upholding the challenged paragraph in this case, the district court ruled that there was no reason to assume that intact families were more deserving of constitutional privacy protections than were those families that were not intact. Specifically, it reasoned:
When we consider that the justification for Florida's grandparent visitation statute is the best interest of the child, it seems to us that it matters little whether the child whose interest is to be protected lives in a loving, nurturing home with both parents, a loving home headed by a working mother whose erstwhile husband has deserted the family or with a loving father devastated by a divorce not of his asking. Article I, Section 23 protects the privacy rights of each of these family units in precisely the same way. None of these loving parents is more or less equal than any other and none is entitled to more or less privacy protection than are the others.
Beagle, 654 So.2d at 1263. Accordingly, the district court extended the Sketo reasoning and found the challenged paragraph constitutional. Judge Webster concurred, noting that he was constrained by the district court's holding in Sketo. He noted, however, that he would prefer to recede from the Sketo decision. He would hold that "the statute at issue here violates both article I, section 23, of the Florida Constitution and the Fourteenth Amendment to the United States Constitution." Beagle, 654 So.2d at 1263 (Webster, J., concurring).

Other Jurisdictions
At the outset, it must be acknowledged that Florida is not the only jurisdiction in which the issue of grandparental visitation rights has been contested. To the contrary, there are divergent views in other jurisdictions as to whether the government can constitutionally infringe upon the rights of parents to raise their children. For instance, in Brooks v. Parkerson, 265 Ga. 189, 454 S.E.2d 769, cert. denied, ___ U.S. ___, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995), the Georgia Supreme Court found that the Georgia Grandparent Visitation Statute was unconstitutional under both the Georgia and federal constitutions. It reasoned that the state cannot interfere with "parental rights to custody and control of children" except in cases where the "health or welfare of a child is threatened." Id. at 773. It then concluded that "even assuming grandparent visitation promotes the health and welfare of the child, the state may only impose that visitation over the parents' objections on a showing that failing to do so would be harmful to the child." Id. The Supreme Court of Tennessee has also addressed this issue in Hawk v. Hawk, 855 S.W.2d 573 (Tenn.1993). It found that the Grandparents' Visitation Act was unconstitutional under the Tennessee Constitution. It stated:
We find, however, that without a substantial danger of harm to the child, a court may not constitutionally impose its own subjective notions of the "best interests of the child" when an intact, nuclear family with fit, married parents is involved.
Id. at 579. It then ruled that "neither the legislature nor a court may properly intervene in parenting decisions absent significant harm to the child from those decisions." Id. at 581. The Tennessee high court concluded that a showing of harm must precede any award of grandparental visitation rights. Neither Georgia nor Tennessee have an express right of privacy in their state constitutions.
On the other hand, the Supreme Court of Wyoming, in Michael v. Hertzler, 900 P.2d 1144 (Wy.1995), held that a "compelling state interest exists in maintaining the right of association of grandparents and grandchildren." Id. at 1151. While holding that the Wyoming grandparental visitation statute was constitutional, it expressly noted that the statute only applied in situations of divorce, death, or extended residence with a grandparent. *1275 Unlike the instant case, the Wyoming statute made no provision for grandparental visitation rights in an intact family. Further, the Supreme Court of Missouri, in Herndon v. Tuhey, 857 S.W.2d 203 (Mo. 1993), has ruled that its grandparental visitation statute is constitutional under the United States Constitution. The Missouri statute requires a showing that grandparental visitation is in the best interest of the child. Other states have also approved grandparental visitation statutes. In those cases a best interest standard was deemed to be sufficient. Lehrer v. Davis, 214 Conn. 232, 571 A.2d 691 (1990); Bailey v. Menzie, 542 N.E.2d 1015 (Ind.Ct.App.1989); Spradling v. Harris, 13 Kan.App.2d 595, 778 P.2d 365 (1989); King v. King, 828 S.W.2d 630 (Ky.), cert. denied, 506 U.S. 941, 113 S.Ct. 378, 121 L.Ed.2d 289 (1992); Ridenour v. Ridenour, 120 N.M. 352, 901 P.2d 770 (App.), cert. denied, 120 N.M. 68, 898 P.2d 120 (1995).

Florida
These cases from other jurisdictions illustrate the constitutional issues created when the government provides for grandparental visitation rights. This issue arises as a result of sociological changes occurring in this country. Our families are increasingly dispersed nationwide. In times past, both the elders and peers within a community could effectuate the internal resolution of this type of dispute. Now, however, there are fewer such natural mechanisms with which to resolve these conflicts. Consequently, governments step in and attempt to establish a process by which to settle these disagreements. The extent to which the government should be involved in settling disputes within the family is a relatively new question in the law. There are, though, certain established principles. We have stated that "this Court and others have recognized a longstanding and fundamental liberty interest of parents in determining the care and upbringing of their children free from the heavy hand of government paternalism." Padgett v. Department of Health and Rehabilitative Serv., 577 So.2d 565, 570 (Fla.1991). The fundamental liberty interest in parenting is protected by both the Florida and federal constitutions. In Florida, it is specifically protected by our privacy provision.[8] Certainly the imposition, by the State, of grandparental visitation rights implicates the privacy rights of the Florida Constitution. All of the parties concede that a privacy analysis under our constitutional provision is required.
On November 4, 1980, the citizens of Florida amended the Florida Constitution by approving the addition of a strong privacy provision. The specific language of the privacy amendment is as follows:
Every natural person has the right to be let alone and free from government intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
Art. I, § 23, Fla. Const. (emphasis added). Only Alaska, California, Florida, Hawaii, and Montana have specifically, through distinct provisions, guaranteed the right to privacy in their state constitutions.[9] In Florida, we have found that our constitutional privacy provision is a guarantee of greater protection than is afforded by the federal constitution.[10] To that end, Justice Adkins has written:
The citizens of Florida opted for more protection from governmental intrusion when they approved article I, section 23, of the Florida Constitution. This amendment is an independent, freestanding constitutional provision which declares the fundamental right to privacy. Article I, section 23, was intentionally phrased in strong terms. The drafters of the amendment rejected the use of the words "unreasonable" or "unwarranted" before the phrase "governmental intrusion" in order to make *1276 the privacy right as strong as possible. Since the people of this state exercised their prerogative and enacted an amendment to the Florida Constitution which expressly and succinctly provides for a strong right of privacy not found in the United States Constitution, it can only be concluded that the right is much broader in scope than that of the Federal Constitution.
Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 548 (Fla.1985).
In Winfield, we also announced the standard of review applicable when determining whether a state intrusion into a citizen's private life is constitutional:
The right of privacy is a fundamental right which we believe demands the compelling state interest standard. This test shifts the burden of proof to the state to justify an intrusion on privacy. The burden can be met by demonstrating that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means.
Id. at 547.
With this foundation, we address a very narrow question. Does the State have a compelling state interest in imposing grandparental visitation rights, in an intact family, over the objection of at least one parent? We find that the challenged paragraph, as currently written, does not demonstrate such a compelling state interest. Our standard is stringent. We have previously held that the statute requiring parental consent prior to an abortion did not satisfy the compelling state interest standard. In re T.W., 551 So.2d 1186 (Fla.1989). On the other hand, we have approved State interference with the fundamental right of parents to raise their children where the State is acting to protect the children from harm. For example, we have allowed the State to terminate parental rights where a substantial risk of significant harm to a child exists. Padgett, 577 So.2d at 571. We have also recognized that the State has a compelling interest in preventing the sexual exploitation of children within the home. Schmitt v. State, 590 So.2d 404 (Fla. 1991), cert. denied, 503 U.S. 964, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992). Our cases have made it abundantly clear that the State can satisfy the compelling state interest standard when it acts to prevent demonstrable harm to a child.
The challenged paragraph does not require the State to demonstrate a harm to the child prior to the award of grandparental visitation rights. Based upon the privacy provision in the Florida Constitution, we hold that the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm. While it may be argued that harm or detriment is always an element of a best interest analysis, we must join our sister courts in Tennessee and Georgia in ruling that a best interest test without an explicit requirement of harm cannot pass constitutional muster in this specific context. In addressing the subjective nature of a best interest analysis in the absence of demonstrable harm, the Supreme Court of Tennessee stated:
The trial court in this case engaged in the presumptive analysis we seek to avoid. Reflecting on his own relationship with his grandparents, the trial judge insisted that he, too, would sue for visitation rights if his children denied him access to his grandchildren. Giving lip service to "the natural parents' prerogative to ... raise their children in the manner in which they feel is best," he nevertheless established extensive visitation with the grandparents against the wishes of the parents. Without finding that the parents were unfit or that a dissolving marriage between the parents had brought the matter of child custody before the court, the court imposed its own notion of the children's best interests over the shared opinion of these parents, stripping them of their right to control in parenting decisions.
Hawk v. Hawk, 855 S.W.2d 573, 582 (Tenn. 1993). Then, the Supreme Court of Georgia succinctly clarified the difference between a mere best interest analysis and the requirement that a harm be demonstrated:
However, even assuming grandparent visitation promotes the health and welfare of the child, the state may only impose that *1277 visitation over the parents' objections on a showing that failing to do so would be harmful to the child. It is irrelevant, to this constitutional analysis, that it might in many instances be "better" or "desirable" for a child to maintain contact with a grandparent.
Brooks, 454 S.E.2d at 773-74 (footnote omitted). We agree with this reasoning. Without a finding of harm, we are unable to conclude that the State demonstrates a compelling interest. We hold that, in the absence of an explicit requirement of harm or detriment, the challenged paragraph is facially flawed.
We emphasize again that our holding in this case is not intended to change the law in other areas of family law where the best interest of the child is utilized to make a judicial determination. In issuing this decision, we have no intent to disrupt or modify the current requirements for best interest balancing in those other areas of family law proceedings.
Finally, it is not our judicial role to comment on the general wisdom of maintaining intergenerational relationships. We must refrain from expressing our personal thoughts as either grandparents or future grandparents. Instead, we only address whether the State may constitutionally impose grandparental visitation upon an intact family after at least one parent has objected to such visitation. We find that it cannot without first demonstrating a harm to the child.
Accordingly, the certified question is answered in the affirmative, the decision of the district court of appeal is quashed, and this case is remanded with directions to affirm the judgment of the trial court.
It is so ordered.
KOGAN, C.J., and SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] § 752.01(1)(a), Fla. Stat. (Supp.1984).
[2] § 752.01(1)(b), Fla. Stat. (Supp.1984).
[3] § 752.01(1)(c), Fla. Stat. (Supp.1984).
[4] § 752.01(2), Fla. Stat. (Supp.1984).
[5] § 752.01(2), Fla. Stat. (Supp.1990).
[6] § 752.015, Fla. Stat. (Supp.1990).
[7] § 752.01(1)(e), Fla. Stat. (1993).
[8] Art. I, § 23, Fla. Const.
[9] Arizona, Illinois, Louisiana, South Carolina, and Washington have included privacy protections in their search and seizure constitutional provisions.
[10] See generally William J. Brennan, State Constitutions and the Protection of Individual Rights, 90 Harv. L.Rev. 489 (1977).