920 So.2d 75 (2006)
TALLAHASSEE MEMORIAL REGIONAL MEDICAL CENTER, INC., Petitioner,
v.
Jon PETERSEN and Kimberly Petersen, husband and wife, and as parents and natural guardians of their daughter, Jennifer Petersen, and Dr. Jana M. Bures Forsthoefel, Respondents.
No. 1D05-5272.
District Court of Appeal of Florida, First District.
January 17, 2006.
*76 Laura Beth Faragasso and Jesse F. Suber of Henry, Buchanan, Hudson, Suber & Carter, P.A., Tallahassee, for petitioner.
William R. Waters, Jr. of Pearson & Waters, P.A., counsel for Respondents Petersen; and Jeannette M. Andrews of Andrews, Crabtree, Knox & Andrews, Tallahassee, counsel for Respondent Forsthoefel.
KAHN, C.J.
By petition for writ of certiorari, Tallahassee Memorial Regional Medical Center, Inc. ("TMRMC") seeks review of a non-final order denying its emergency motion for appointment of a guardian ad litem. Because TMRMC fails to demonstrate any departure from the essential requirements of law by the trial court, we deny the petition.

BACKGROUND
On December 18, 2001, Kimberly Petersen was admitted to TMRMC for pain associated with her pregnancy. Kimberly was monitored and administered several medications. On December 20, 2001, Kimberly's baby (Jennifer Petersen) had a sudden drop in both fetal heart rate and blood pressure. Under these signs of fetal distress, Dr. Jana Forsthoefel performed an immediate cesarean section. During the procedure, serious complications arose.
Respondents Jon and Kimberly Petersen, individually and as parents and natural guardians of their daughter, Jennifer, have filed a two-count medical malpractice action against TMRMC and Dr. Forsthoefel. The complaint details injuries sustained by Jennifer Petersen during her *77 birth at TMRMC. The Petersens contend that Jennifer suffered birth asphyxia and has since been diagnosed with cerebral palsy. The Petersens allege negligence due to delayed diagnosis of fetal distress, failure to properly monitor the nature of the disorder causing Kimberly's symptomology, and failure to timely report or discuss the nature, extent, and severity of the cause of Kimberly's symptomology.
Dr. Forsthoefel sought to abate the medical negligence action due to the Petersens' failure to comply with the presuit requirement imposed by the Florida Birth-Related Neurological Compensation Act ("Act") before filing the circuit court action. The parties agreed to abate the action. The Petersens then filed a petition to determine compensability with the Florida Birth-Related Neurological Injury Compensation Association. Both TMRMC and the doctor intervened in the administrative proceeding.
The administrative law judge ("ALJ") entered a final order on compensability and notice on September 8, 2005. The ALJ determined that Jennifer did suffer a compensable, birth-related neurological injury. The ALJ further concluded that Dr. Forsthoefel gave Petersen pre-delivery notice of her status as a participating physician and was, therefore, entitled to immunity under the Act. However, the ALJ determined that TMRMC had not given Petersen the notice required by section 766.316, nor was it excused from doing so. The ALJ awarded the Petersens lifetime medical expenses for Jennifer, plus $100,000.00, and reasonable expenses incurred in connection with the filing of the claim.
On the day after entry of the ALJ's order, the Petersens served in the circuit court action a notice for readiness of trial. They also informed counsel for TMRMC of their intention to reject the award under the Act and instead pursue their medical malpractice claim against TMRMC.
TMRMC filed an emergency motion for the appointment of a guardian ad litem. The motion sought to require a determination of whether the rejection of the guaranteed payment under the Act in exchange for the chance of a jury verdict was in Jennifer's best interest. TMRMC noted that the uncertainty of litigation before a jury, combined with the customary delays associated with any jury trial, including the potential for appeal by either party, were factors which should be evaluated by a guardian ad litem before rejection of the administrative award. TMRMC argued that the Petersens' interests conflicted with their child's and that an independent advocate should make recommendations as to whether the child's best interests would be served by a lawsuit.
The trial court denied the motion to appoint a guardian ad litem. The trial judge commented at the hearing that it would be improper to establish a precedent of appointing a guardian ad litem every time parents who were litigating on behalf of their children rejected a settlement offer or other monetary award in favor of initiating or continuing litigation. The trial judge also expressed concern that the proponent for appointing a guardian ad litem was TMRMC, the defendant in the case, and not a family member or other concerned party.

ANALYSIS

A. Appointment of Guardians Ad Litem Generally
A mother and father jointly are the natural guardians of their child during the child's minority. § 744.301(1), Fla. Stat. (2004). Florida law does, however, recognize circumstances under which a trial court may or must appoint a guardian ad *78 litem to protect the interests of the minor child.
Generally, in civil matters, a trial court "shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." Fla. R. Civ. P. 1.210(b). Although the appointment under the rule of civil procedure is discretionary, other specific statutes and rules contemplate appointment of guardians ad litem for minor children in particular proceedings.
Section 731.303(4), Florida Statutes (2004), provides that, in probate proceedings, "[i]f the court determines that representation of the interest would otherwise be inadequate, the court, may, at any time, appoint a guardian ad litem to represent the interests of ... a minor." Florida Probate Rule 5.120(a) provides for discretionary appointment of a guardian ad litem in estate and trust proceedings where a minor has no personal representative or guardian, or the personal representative or guardian may have adverse interests. Section 744.301(4)(a), Florida Statutes (2004), permits a court to appoint a guardian ad litem to represent a minor child's interest in any case in which the minor has a gross settlement exceeding $15,000 for a claim for personal injury, property damage or wrongful death. If the gross settlement equals or exceeds $25,000, the court must appoint a guardian ad litem to represent the minor. Id.
Section 39.402(8)(c), Florida Statutes (2004), requires the court to appoint a guardian ad litem for a minor child at a shelter hearing unless the court deems the representation unnecessary. Pursuant to section 39.807(2)(a), Florida Statutes (2004), and Florida Rule of Juvenile Procedure 8.215, the court must appoint a guardian ad litem to represent a child in any termination of parental rights proceeding. Section 39.822, Florida Statutes (2004), mandates the appointment of a guardian ad litem to represent a child in any civil or criminal abuse, abandonment, or neglect proceeding.
The court has discretion to appoint a guardian ad litem to represent a minor child in any action for dissolution of marriage, modification, parental responsibility, custody, or visitation if it finds the appointment to be in the best interests of the child. § 61.401, Fla. Stat. (2004). In quiet title actions, section 65.061(2), Florida Statutes (2004), prohibits the appointment of a guardian ad litem unless it appears that the interests of minors and specified others are involved. In eminent domain proceedings, section 73.021(4), Florida Statutes (2004), permits the court to appoint a guardian ad litem for defendants who are infants or are under other legal disabilities.
Section 390.01115(4)(a), Florida Statutes (2004), and Florida Rule of Civil Procedure 1.840(d) allow the court to appoint a guardian ad litem to represent a minor in proceedings to terminate a pregnancy without parental notification. Pursuant to section 397.681(2), Florida Statutes (2004), the court must appoint a guardian ad litem to act on a minor's behalf in any action for involuntary assessment, stabilization, or involuntary treatment for substance abuse. Section 743.09(3) permits a court to appoint a guardian ad litem to represent a minor in a proceeding to approve a contract for artistic or creative services by a minor or a professional sport contract for a minor. A guardian ad litem is mandatory, however, when the parent or guardian receives remuneration or financial gain under the contract or when the parent has any other conflict of interest with the minor as defined by section 744.446, Florida Statutes (2004).
*79 If an action is brought by the guardian against the child, or vice versa, the court must appoint a guardian ad litem to represent the child in that particular proceeding. § 744.391, Fla. Stat. (2004). Pursuant to section 914.17(1), Florida Statutes (2004), a court must appoint a guardian ad litem to represent a minor child if the minor is a victim of or a witness to child abuse or neglect or if the minor is a victim of a sexual offense or a witness to a sexual offense committed against another minor. The court has discretion to appoint a guardian ad litem in any other criminal proceeding in which the minor child is a witness or a victim. Id.
Section 984.17(1), Florida Statutes (2004), permits the court to appoint a guardian ad litem in proceedings seeking an adjudication that the child is in need of services. See also Fla. R. Juv. P. 8.617. Section 985.219(7), Florida Statutes (2004), mandates that the court appoint a guardian ad litem to represent a child in juvenile offender proceedings if the identity or residence of the parents or guardians is unknown, if the parents or guardians are residents of another state, or if they evade service or ignore a summons. Florida Rule of Juvenile Procedure 8.170 generally authorizes the court to appoint a guardian ad litem in juvenile delinquency matters. Finally, Florida Rule of Juvenile Procedure 8.715 permits the court to appoint a guardian ad litem to represent a minor child in proceedings relating to the appointment of a guardian advocate for drug-dependent newborns.

B. Appointment of a Guardian Ad Litem in this Proceeding
As a threshold for certiorari relief, TMRMC must demonstrate that the trial court committed errors amounting to a departure from the essential requirements of the law. See Martin-Johnson v. Savage, 509 So.2d 1097 (Fla.1987); Fla. Sheriff's Self-Ins. Fund v. Escambia County, 585 So.2d 461 (Fla. 1st DCA 1991). The district courts have a large degree of discretion in ruling on a petition for writ of certiorari. See Combs v. State, 436 So.2d 93, 95-96 (Fla.1983).
TMRMC argues in the instant petition that the Petersens have a conflict of interest with their minor child, Jennifer. It contends that the funding for Jennifer's lifetime medical needs would be irrevocably lost if her parents reject the award. TMRMC concedes that the Petersens are statutorily entitled to elect their remedy. See § 766.303(2), Fla. Stat. (2004). Nevertheless, TMRMC argues that the Petersens' decision to relinquish a lifetime of medical care for their child in exchange for the speculative potential of a jury verdict against TMRMC might not be in Jennifer's best interest.
The Florida Birth-Related Neurological Compensation Act, sections 766.301-766.316, Florida Statutes (2004), was enacted to provide compensation for birth-related neurological injury claims. The Act does not provide, however, for the appointment of a guardian ad litem to represent the interests of the injured child. Nor does the Act contain any other provision that mandates appointment of a guardian ad litem under the present circumstances.
TMRMC fails to demonstrate that the interests of the Petersens are so adverse to that of Jennifer as to require the appointment of a guardian ad litem. The mere decision to proceed in an attempt to gain fuller recovery for the child is not, even in the face of some risk, tantamount to an adverse interest. By filing the complaint for medical malpractice in circuit court, the Petersens sought monetary damages for bodily injury including pain and suffering, and other general damages. *80 These claims are not adverse to Jennifer's interests. Indeed, the facts as presented indicate that the interests of Jennifer coincide fully with the interests of the parents. Cf. Mistretta v. Mistretta, 566 So.2d 836 (Fla. 5th DCA 1990) (holding that child's interests were properly represented by mother where mother sought payment of child support from former husband who held himself out to others as the child's father).
In the complaint, the Petersens sought monetary damages for personal injury to Jennifer, including future medical expenses. These damages are for Jennifer's benefit and not her detriment. TMRMC has not shown that the Petersens seek personal financial gain at the expense of Jennifer. Cf. Fla. Power & Light Co. v. Macias, 507 So.2d 1113 (Fla. 3rd DCA 1987) (holding that the parents had an adverse interest requiring the appointment of a guardian ad litem where the parents' compensation came from the same settlement fund as compensation for the child). Thus, Jennifer's interests are properly represented by her natural guardians, the Petersens.

C. Right of Privacy
Under TMRMC's theory, virtually any litigation decision made by parents could be subjected to review by a stranger to the parent-child relationship. Requiring a guardian ad litem under the not-unusual facts of this case would directly interfere with the parents' familial right of privacy. The Florida Constitution explicitly declares that "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life." Art. I, § 23, Fla. Const. This fundamental right of privacy under the Florida Constitution is much broader in scope than that under the Federal Constitution. See Beagle v. Beagle, 678 So.2d 1271 (Fla.1996). An attempt to appoint a guardian ad litem in this type of case must take into account the beneficial restraints of our privacy amendment.
Case law has extended the constitutional right of privacy to encompass family privacy. See, e.g., id. at 1272 (invalidating a grandparent visitation statute because "the challenged paragraph infringes upon the rights of parents to raise their children free from government intervention"). Florida recognizes "a constitutionally protected interest in preserving the family and raising one's children." S.B. v. Dep't of Children & Families, 851 So.2d 689, 692 (Fla.2003); see Padgett v. Dep't of Health & Rehab. Servs., 577 So.2d 565, 570 (Fla.1991) (recognizing "a longstanding and fundamental interest of parents in determining the care and upbringing of their children free from the heavy hand of governmental paternalism").
The Florida Supreme Court has repeatedly held that natural parents have a right to make decisions about their child's welfare without interference by third parties. See generally Von Eiff v. Azicri, 720 So.2d 510 (Fla.1998). In Von Eiff, the Florida Supreme Court held that "[n]either the legislature nor the courts may properly intervene in parental decision-making absent significant harm to the child threatened by or resulting from those decisions." 720 So.2d at 514. As discussed above, TMRMC does not show that any significant harm to the child will result from the Petersens' decision to waive the compensation award under the Act and seek further damages in the circuit court action. TMRMC has merely shown that the Petersens' election of a civil remedy has some risk and does not preserve the guaranteed return of the administrative compensation award. This is an insufficient basis upon which to invade the Petersens' fundamental parental privacy rights.

*81 CONCLUSION

TMRMC fails to show any "violation of a clearly established principle of law resulting in a miscarriage of justice." Combs, 436 So.2d at 96. Accordingly, we DENY the petition for writ of certiorari.
VAN NORTWICK and HAWKES, JJ., concur.