THOMAS, J.,
Dissenting.
I respectfully dissent. The trial court’s ruling denying the adoption petition and granting a mixed guardianship denies two young children the opportunity to have fit and caring parents, based only on one reason: to guarantee visitation rights for Appellees, the children’s paternal grandparents, who did not seek to adopt the children. Thus, the trial court denied adoption solely to create visitation rights for grandparents, where none exists in law. See Von Eiff v. Azicri, 720 So.2d 510, 511 (Fla.1998) (holding that section 752.01(l)(a), Florida Statutes (1993), is unconstitutional, which permits grandparent visitation when the court determines it is in the child’s best interests and one or both of the child’s parents are deceased, and explaining that grandparents have no legal right at common law to visit their grandchildren when the child’s parents oppose the visitation). This directly conflicts with Florida’s public policy preference for permanent family relationships and, in my view, is an abuse of discretion. See § 63.022(3), Fla. Stat. (2006). It is never in a child’s best interest to deprive him or her of appropriate adoptive parents solely to deprive those prospective parents of the parental authority granted under the Constitution. See Troxel v. Granville, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (explaining that the Due Process Clause of the Fourteenth Amendment provides heightened protection against government interference with the parents’ liberty interest in the care, custody, and control of their children). Accordingly, I would reverse with directions to vacate the guardianship orders and grant the adoption petition.

Facts

. The children became orphans at a young age following their parents’ deaths. During the two years after their mother’s death, but before their father’s death, the children spent much of their time in Appellants’ home with Appellants performing most child rearing duties.
Almost immediately after their father’s death, Appellants, the maternal grandparents, sought adoption. Appellees, the paternal grandparents, then petitioned to become the children’s guardians. After consolidating the petitions, the court found that both Appellants and Appellees would make excellent caregivers. It also found that the children’s father wanted Appellants to raise his children, should he be unable to raise them, but found that it would be “in the best interests of the minor children to enjoy the love, affection and involvement of all their grandparents in their lives, no matter who maintains their primary residence.” The court was concerned with an adoption’s finality and did not trust Appellants’ testimony that they would permit Appellees to be involved in the children’s lives if the adoption were granted; therefore, it granted a mixed guardianship, with Appellees receiving “liberal and frequent visitation.”

Analysis

I acknowledge that the trial court has the discretion to determine whether Appellants’ adoption is in the children’s best *1053 interests; however, as in other legal matters, a trial court’s discretion is not unlimited. For example, a trial court’s discretion when making evidentiary rulings is limited by the evidence code and applicable case law. McCray v. State, 919 So.2d 647, 648 (Fla. 1st DCA 2006). Similarly, in determining an adoption petition, I believe a trial court’s discretion is limited by public policy constraints and the parents’ constitutional right to make child rearing decisions without state interference. Therefore, once the trial court determined that Appellants would be fit parents, I do not believe it had discretion to deny the petition solely to ensure that Appellees had visitation rights, especially in light of its factual finding that the children’s father wanted Appellants to raise the children. This conflicts with Florida’s public policy and a parent’s constitutional rights.
Under Florida law, permanency and adoption are preferred. § 63.022(l)(a), Fla. Stat. (2006) (“The state has a compelling interest in providing stable and permanent homes for adoptive children in a prompt manner”). The adoption statutes are intended “to provide to all children who can benefit by it a permanent family life[.]” § 63.022(3), Fla. Stat. (2006). Further, in the context of a child’s placement in the dependency system, adoption is preferable to guardianship. § 39.621(2), Fla. Stat. (2006).
The order here granting a mixed guardianship is even more troubling because it ensures judicial entanglement in the children’s lives until they reach majority. Under the guardianship statutory provisions, Appellees may challenge Appellants’ child rearing decisions, such as where the children attend school or whether they will undergo surgery, with the court resolving any dispute. See, e.g., § 744.3715, Fla. Stat. (2006) (“At any time, any interested person ... may petition the court for review alleging that the guardian is not complying with the guardianship plan or is exceeding his or her authority under the guardianship plan and the guardian is not acting in the best interest of the ward.”). The trial court’s order ensures that every significant child rearing decision, normally made by parents, can be made by the court. This conflicts with the constitutional principle that parents have a fundamental right to raise their children free from state interference. See Troxel, 530 U.S. at 65-66,120 S.Ct. 2054.
Appellees assert that a mixed guardianship is the only way they can continue to have a meaningful and legally enforceable role in their grandchildren’s lives. While Appellees and the trial court might believe that a guardianship is the preferable outcome, such a temporary arrangement is entirely inconsistent with the legislature’s mandate that establishing a permanent family is the paramount consideration in adoption. See § 63.022(3), Fla. Stat. (2006). In addition to its direct conflict with legislative directives, the trial court’s order conflicts with a parent’s fundamental right to make child rearing and educational decisions, which includes the right to deny grandparent visitation. Von Eiff, 720 So.2d at 513, 518; see also Beagle v. Beagle, 678 So.2d 1271, 1272 (Fla.1996) (holding the state lacks a compelling interest to justify mandating grandparent visitation rights over a parent’s objection).
In my view, the trial court’s ruling denying adoption cannot be based on the sole rationale, however laudable, that granting an adoption authorizes the adoptive parents to potentially deny grandparent visitation, as natural parents have the right to do. Treating natural parents differently from adoptive parents is specifically rejected by section 63.032(2), Florida Statutes (2005) (defining adoption as “the act of creating the legal relationship between *1054 parent and child where it did not exist, thereby declaring the child to be legally the child of the adoptive parents and their heir at law and entitled to all the rights and privileges and subject to all the obligations of a child born to such adoptive parents in lawful wedlock.”).
The concept of a “family as a unit with broad parental authority over minor children” is deeply rooted in American jurisprudence and Western civilization. Parham v. J.R., 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). A permanent family is the bedrock of human society and the foundation of our traditions. See Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (explaining that the “primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.”). Thus, the legislature has established permanency as the primary goal when considering the best interests of children in family law proceedings.
Because the trial court’s ruling deprived the children of a permanent family in order to give Appellees the right to participate in the children’s upbringing, when they did not seek to incur the obligations of parenthood, I respectfully dissent. In my view, this court should vacate the guardianship orders and reverse the order denying the adoption petition.