969 So.2d 1049 (2007)
G.S. and B.S., maternal grandparents of I.S. and C.S., children, Appellants/Cross-Appellees,
v.
T.B. and E.B., paternal grandparents, Appellees/Cross-Appellants.
No. 1D06-5264.
District Court of Appeal of Florida, First District.
September 12, 2007.
Order Denying Rehearing and Rehearing and Granting Certification November 20, 2007.
Rehearing Denied December 17, 2007.
*1050 Bryan S. Gowdy and John S. Mills of Mills & Creed, P.A., Jacksonville, for Appellants/Cross-Appellees.
William S. Graessle of William S. Graessle, P.A., Jacksonville, for Appellees/Cross-Appellants.
Order Denying Rehearing and Rehearing En Banc and Granting Certification November 20, 2007.
BROWNING, C.J.
Disposition of this appeal compels this court to answer a question of first impression:
Did the trial court have the discretion to deny the petition for adoption of I.S. and C.S. (children), orphans, filed by G.S. and B.S. (Appellants, and the children's maternal grandparents), when resisted by T.B. and E.B. (Appellees, and the children's paternal grandparents), after the trial court determined that Appellants are fit and proper persons to rear the children?
The trial court concluded that it did and denied the Appellants' petition for adoption, but granted them primary custody of the children and appointed them guardians of the children's person. Also, the trial court, on Appellees' guardianship petition, appointed them as the guardians of the children's property and ordered that Appellees were to have liberal and frequent visitation with the children; if the parties were unable to agree upon a visitation schedule, they were ordered to follow the standard visitation guidelines for the Fourth Judicial Circuit. Appellants seek reversal of that ruling, alleging that the trial court abused its discretion by not entering a final judgment of adoption of the children after finding that Appellants are fit and proper persons to rear the children. We disagree and affirm.
Adoption is strictly controlled by statute, as it did not exist as a part of our adopted common law. See In re Estate of Levy, 141 So.2d 803, 805 (Fla. 2d DCA 1962). Chapter 63, Florida Statutes, controls adoption in Florida. For this appeal the controlling provisions are:
It is the intent of the Legislature that in every adoption, the best interest of the child should govern and be of foremost concern in the court's determination. The court shall make a specific finding as to the best interest of the child in accordance with the provisions of this chapter.
. . .
In all matters coming before the court under this chapter, the court shall enter such orders as it deems necessary and suitable to promote and protect the best interests of the person to be adopted.
§ 63.022(2) & (4)(l), Fla. Stat. (2006).
JUDGMENT.  At the conclusion of the hearing, after the court determines that *1051 the date for a parent to file an appeal of a valid judgment terminating that parent's parental rights has passed and no appeal, pursuant to the Florida Rules of Appellate Procedure, is pending and that the adoption is in the best interest of the person to be adopted, a judgment of adoption shall be entered.
§ 63.142(4), Fla. Stat., (2006).
We conclude from these provisions that in adoption proceedings, the legislature vested broad discretion in the trial courts of this state to determine the best interest of children sought to be adopted, and did not limit the traditional trial court's discretion, as maintained by Appellants. Here the trial court heard extensive testimony relating to the children's best interest and concluded their best interest compelled that the adoption should be denied. We cannot hold that this is an abuse of discretion.
We do not take lightly the compelling argument advanced by Appellants that a permanent family unit established by the adoption process is a highly desirable goal and, in most cases, advances the best interest of the children sought to be adopted. We merely hold that Chapter 63 does not require a trial court to enter a final judgment of adoption upon a determination that the persons seeking adoption are fit to rear the child, to the exclusion of other factors that impact the child's best interest and might dictate, in the discretion of the trial court, a disposition other than adoption. If a trial court's discretion is to be limited, as Appellants maintain here, it must be done by the legislature, not by this court.
AFFIRMED.
WOLF, J., Concurs With Opinion.
THOMAS, J., Dissents With Opinion.
WOLF, J., Concurring.
I concur in the decision reached by the majority because the trial court has the obligation to determine the best interests of the child in deciding whether to grant an adoption. I write because I believe Judge Browning's opinion and the dissent have mischaracterized the issue in this case. I also believe the dissent's reliance on Von Eiff v. Azicri, 720 So.2d 510 (Fla. 1998), and Beagle v. Beagle, 678 So.2d 1271 (Fla.1996), is misplaced.
The focus of this case is the trial court's finding that it was not in the best interest of the children to be permanently adopted by the maternal grandparents who were unwilling to allow reasonable visitation with the paternal grandparents. The majority opinion misstates the issue before this court on page 2, when it states that the trial court determined that appellants are fit and proper persons to rear the children. The dissent argues that "the trial court denied adoption solely to create visitation rights for grandparents where none exists in law." Both of these statements focus on the grandparents' rights rather than the trial court's proper concern that the actions of the maternal grandparents were not in the best interest of the children.
The gist of the trial court's decision was that the maternal grandparents were unfit to adopt these children because they were unreasonably denying visitation with the paternal grandparents. The trial court specifically found it is "in the best interest of the minor children to enjoy the love and affection and involvement of all their grandparents in their lives no matter who maintains their primary residence." This is not an unreasonable conclusion based on these children having recently lost both their real parents.
The basic reasoning of Von Eiff and Beagle is that the State (through the *1052 court) has no business intruding on an existing parental relationship absent a showing of harm to the child (e.g., dependency). In the instant case, no parental relationship exists. The parties are seeking the assistance of the court to create a legal relationship through adoption. Under these circumstances, the court does and should have broad discretion to determine the best interests of the children. It was those best interests which the court determined were being ignored by the prospective adopters based on their behavior toward the other grandparents.
THOMAS, J., Dissenting.
I respectfully dissent. The trial court's ruling denying the adoption petition and granting a mixed guardianship denies two young children the opportunity to have fit and caring parents, based only on one reason: to guarantee visitation rights for Appellees, the children's paternal grandparents, who did not seek to adopt the children. Thus, the trial court denied adoption solely to create visitation rights for grandparents, where none exists in law. See Von Eiff v. Azicri, 720 So.2d 510, 511 (Fla.1998) (holding that section 752.01(1)(a), Florida Statutes (1993), is unconstitutional, which permits grandparent visitation when the court determines it is in the child's best interests and one or both of the child's parents are deceased, and explaining that grandparents have no legal right at common law to visit their grandchildren when the child's parents oppose the visitation). This directly conflicts with Florida's public policy preference for permanent family relationships and, in my view, is an abuse of discretion. See § 63.022(3), Fla. Stat. (2006). It is never in a child's best interest to deprive him or her of appropriate adoptive parents solely to deprive those prospective parents of the parental authority granted under the Constitution. See Troxel v. Granville, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (explaining that the Due Process Clause of the Fourteenth Amendment provides heightened protection against government interference with the parents' liberty interest in the care, custody, and control of their children). Accordingly, I would reverse with directions to vacate the guardianship orders and grant the adoption petition.

Facts
The children became orphans at a young age following their parents' deaths. During the two years after their mother's death, but before their father's death, the children spent much of their time in Appellants' home with Appellants performing most child rearing duties.
Almost immediately after their father's death, Appellants, the maternal grandparents, sought adoption. Appellees, the paternal grandparents, then petitioned to become the children's guardians. After consolidating the petitions, the court found that both Appellants and Appellees would make excellent caregivers. It also found that the children's father wanted Appellants to raise his children, should he be unable to raise them, but found that it would be "in the best interests of the minor children to enjoy the love, affection and involvement of all their grandparents in their lives, no matter who maintains their primary residence." The court was concerned with an adoption's finality and did not trust Appellants' testimony that they would permit Appellees to be involved in the children's lives if the adoption were granted; therefore, it granted a mixed guardianship, with Appellees receiving "liberal and frequent visitation."

Analysis
I acknowledge that the trial court has the discretion to determine whether Appellants' adoption is in the children's best *1053 interests; however, as in other legal matters, a trial court's discretion is not unlimited. For example, a trial court's discretion when making evidentiary rulings is limited by the evidence code and applicable case law. McCray v. State, 919 So.2d 647, 648 (Fla. 1st DCA 2006). Similarly, in determining an adoption petition, I believe a trial court's discretion is limited by public policy constraints and the parents' constitutional right to make child rearing decisions without state interference. Therefore, once the trial court determined that Appellants would be fit parents, I do not believe it had discretion to deny the petition solely to ensure that Appellees had visitation rights, especially in light of its factual finding that the children's father wanted Appellants to raise the children. This conflicts with Florida's public policy and a parent's constitutional rights.
Under Florida law, permanency and adoption are preferred. § 63.022(1)(a), Fla. Stat. (2006) ("The state has a compelling interest in providing stable and permanent homes for adoptive children in a prompt manner"). The adoption statutes are intended "to provide to all children who can benefit by it a permanent family life[.]" § 63.022(3), Fla. Stat. (2006). Further, in the context of a child's placement in the dependency system, adoption is preferable to guardianship. § 39.621(2), Fla. Stat. (2006).
The order here granting a mixed guardianship is even more troubling because it ensures judicial entanglement in the children's lives until they reach majority. Under the guardianship statutory provisions, Appellees may challenge Appellants' child rearing decisions, such as where the children attend school or whether they will undergo surgery, with the court resolving any dispute. See, e.g., § 744.3715, Fla. Stat. (2006) ("At any time, any interested person . . . may petition the court for review alleging that the guardian is not complying with the guardianship plan or is exceeding his or her authority under the guardianship plan and the guardian is not acting in the best interest of the ward."). The trial court's order ensures that every significant child rearing decision, normally made by parents, can be made by the court. This conflicts with the constitutional principle that parents have a fundamental right to raise their children free from state interference. See Troxel, 530 U.S. at 65-66, 120 S.Ct. 2054.
Appellees assert that a mixed guardianship is the only way they can continue to have a meaningful and legally enforceable role in their grandchildren's lives. While Appellees and the trial court might believe that a guardianship is the preferable outcome, such a temporary arrangement is entirely inconsistent with the legislature's mandate that establishing a permanent family is the paramount consideration in adoption. See § 63.022(3), Fla. Stat. (2006). In addition to its direct conflict with legislative directives, the trial court's order conflicts with a parent's fundamental right to make child rearing and educational decisions, which includes the right to deny grandparent visitation. Von Eiff, 720 So.2d at 513, 518; see also Beagle v. Beagle, 678 So.2d 1271, 1272 (Fla.1996) (holding the state lacks a compelling interest to justify mandating grandparent visitation rights over a parent's objection).
In my view, the trial court's ruling denying adoption cannot be based on the sole rationale, however laudable, that granting an adoption authorizes the adoptive parents to potentially deny grandparent visitation, as natural parents have the right to do. Treating natural parents differently from adoptive parents is specifically rejected by section 63.032(2), Florida Statutes (2005) (defining adoption as "the act of creating the legal relationship between *1054 parent and child where it did not exist, thereby declaring the child to be legally the child of the adoptive parents and their heir at law and entitled to all the rights and privileges and subject to all the obligations of a child born to such adoptive parents in lawful wedlock.").
The concept of a "family as a unit with broad parental authority over minor children" is deeply rooted in American jurisprudence and Western civilization. Parham v. J.R., 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). A permanent family is the bedrock of human society and the foundation of our traditions. See Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (explaining that the "primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."). Thus, the legislature has established permanency as the primary goal when considering the best interests of children in family law proceedings.
Because the trial court's ruling deprived the children of a permanent family in order to give Appellees the right to participate in the children's upbringing, when they did not seek to incur the obligations of parenthood, I respectfully dissent. In my view, this court should vacate the guardianship orders and reverse the order denying the adoption petition.
OPINION ON APPELLANTS' MOTION TO CERTIFY QUESTIONS OF GREAT PUBLIC IMPORTANCE, FOR REHEARING EN BANC, AND FOR REHEARING
PER CURIAM.
This cause is before us on Appellants' Motion to Certify Questions of Great Public Importance, For Rehearing En Banc, and For Rehearing. We deny the Motion For Rehearing En Banc and For Rehearing, but grant the Motion to Certify Questions of Great Public Importance. We certify the following question as a matter of great public importance:
DOES A TRIAL COURT ABUSE ITS DISCRETION GRANTED BY CHAPTER 63, FLORIDA STATUTES, WHEN IT DENIES AN ADOPTION PETITION FILED BY THE ORPHANED CHILD'S MATERNAL GRANDPARENTS, WHO ARE DEEMED TO BE FIT PROSPECTIVE PARENTS, BASED ON THE COURT'S DETERMINATION THAT DENYING THE PETITION IS IN THE CHILD'S BEST INTEREST FOR ENSURING THE PATERNAL GRANDPARENTS' INVOLVEMENT IN THE CHILD'S LIFE?
BROWNING, C.J., WOLF and THOMAS, JJ., CONCUR.