# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D17-4463

———————————————

MARCY NICOLE OVERSTREET,

    Appellant,

    v.

DWAYNE STANLEY OVERSTREET,

    Appellee.

———————————————

On appeal from the Circuit Court for Duval County.
John I. Guy, Judge.

April 25, 2018

KELSEY, J.

In this case of first impression, the mother challenges the trial court's interpretation of section 61.13002(2), Florida Statutes (2016), which allows a military servicemember to designate a family member to exercise that parent's time-sharing while the servicemember is under temporary assignment orders to relocate away from the child. The mother also challenges the facial constitutionality of the statute. We reverse because we conclude that this section does not apply. We need not reach the constitutional challenge, and decline to do so.

**Section 61.13002(2)**

Section 61.13002(2) provides as follows:

> If a parent is activated, deployed, or temporarily assigned to military service on orders in excess of 90 days and the parent's ability to comply with time-sharing is materially affected as a result, the parent may designate a person or persons to exercise time-sharing with the child on the parent's behalf. The designation shall be limited to a family member, a stepparent, or a relative of the child by marriage. The designation shall be made in writing and provided to the other parent at least 10 working days before the court-ordered period of time-sharing commences. The other parent may only object to the appointment of the designee on the basis that the designee's time-sharing visitation is not in the best interests of the child. When unable to reach agreement on the delegation, either parent may request an expedited court hearing for a determination on the designation.

Subsection (7) of the statute provides that "[t]his section does not apply to permanent change of station moves by military personnel, which shall be governed by s. 61.13001." § 61.13002(7), Fla. Stat. In turn, section 61.13001, although entitled "Parental relocation *with a child*" (emphasis added), defines "relocation" as "a change in the location of the principal residence of a parent or other person," which must be "at least 50 miles from" the previous principal residence and "for at least 60 consecutive days." § 61.13001(1)(e), Fla. Stat.

The 2018 Florida Legislature repealed section 61.13002(2), effective as of July 1, 2018. Ch. 18-69, § 2, Laws of Fla. In its place, the Legislature unanimously created a new part IV of Chapter 61 of the Florida Statutes, entitled "Uniform Deployed Parents Custody and Visitation Act" (UDPCVA). Ch. 18-69, § 1, Laws of Fla. (creating new sections 61.703-773 of the Florida Statutes). As its title indicates, the new statute is a uniform act that fourteen

states have adopted.[1] The new uniform act contains a designation provision somewhat similar to that of section 61.13002(2), as follows:

> Upon the motion of a deploying parent and in accordance with general law, if it is in the best interest of the child, a court may grant temporary caretaking authority to a nonparent who is an adult family member of the child or an adult who is not a family member with whom the child has a close and substantial relationship. In the case of an adult who is not a family member with whom the child has a close and substantial relationship, the best interest of the child must be established by clear and convincing evidence.

Ch. 18-69, § 1, Laws of Fla. (creating new section 61.739(1)).

It does not appear that any reported decision addresses whether the designation provision of section 61.13002(2) is constitutional in light of the Florida Supreme Court's decision in *Beagle v. Beagle*, 678 So. 2d 1271 (Fla. 1996), and its progeny.[2] *Beagle* holds that the state cannot grant visitation rights to grandparents in an intact family if one of the child's parents objects, without demonstrating a compelling state interest. *Id.* at 1276–77. Later cases expanded the *Beagle* holding to preclude grandparent visitation absent a showing of actual harm to the child in families that are non-intact by reason of death, dissolution,

---

[1] *Legislative Fact Sheet – Deployed Parents Custody and Visitation Act*, National Conference of Commissioners on Uniform State Laws, http://www.uniformlaws.org/Act.aspx?title=Deployed%20Parents%20Custody%20and%20Visitation%20Act (last visited Apr. 10, 2018) (listing the states that have adopted the Act).

[2] Likewise, it does not appear that any court has addressed the constitutionality of the similar "temporary caretaking authority" provision of the UDPCVA. *But see Ledoux-Nottingham v. Downs*, 210 So. 3d 1217, 1222-23 (Fla. 2017) (enforcing Colorado order mandating grandparent visitation that would violate Florida law, because under the Supremacy Clause, federal Parental Kidnapping Prevention Act prevails over contrary Florida law).

and illegitimacy. *See Sullivan v. Sapp*, 866 So. 2d 28, 35-37 (Fla. 2004) (detailing post-*Beagle* holdings declaring portions of the grandparent visitation statute unconstitutional). The supreme court's consistent rule is that the state can show the requisite compelling interest only by showing that the child will endure actual harm as a result of the lack of grandparent visitation. *Id.* at 36-37. As the court held in *Sullivan*, "Clearly, this Court has consistently held all statutes that have attempted to compel visitation or custody with a grandparent based solely on the best interest of the child standard, without the required showing of harm to the child, to be unconstitutional." *Id.* at 37.

The law requires us to refrain from reaching constitutional questions if we can resolve the case on other grounds. *In re Holder*, 945 So. 2d 1130, 1133 (Fla. 2006). Because we can resolve this case without passing upon the statute's constitutionality, we decline to address the mother's constitutional challenge to section 61.13002(2).

**Facts**

The parties have an ongoing dissolution proceeding. They also have a daughter who is just over a year old. The father is an active member of the United States Navy, who was stationed in Pensacola when the parties got married. Before the baby was born, the Navy asked the father to indicate his top five picks of where he would like to be stationed next. The parties agreed that they would like to live in Guam, and the Navy assigned the father to Guam for three years. As part of the move, the Navy offered the father an Overseas Housing Allowance and to ship his car to Guam. The parties planned to move to Guam together with the baby. However, the father filed for dissolution before the baby was born. The parties could not agree on timesharing plans. The father went to Guam alone in July 2017.

Pursuant to section 61.13002(2), the father designated his parents, the child's paternal grandparents, to exercise his timesharing while he is stationed in Guam. The mother objected to the designation, expressing concerns about the suitability of the paternal grandparents, which the trial court rejected. The mother also argued that section 61.13002(2) did not apply because the assignment to Guam was a permanent change of station as defined

4

by the Navy, and not a temporary assignment as would be required to invoke section 61.13002(2). The trial court found that the legislature did not define "temporarily assigned," and adopted the father's reasoning that any assignment of a definite duration in excess of ninety days is temporary. The order on appeal finds the assignment to be temporary, and thus finds section 61.13002(2) applicable.[3]

The order finds it in the child's best interests to allow the paternal grandparents to exercise the father's timesharing with the child for so long as the father is stationed in Guam. The best interests articulated in the order are that the child will live with the father in the paternal grandparents' home when the father comes back to the States, and thus the child's reunification with the father will be easier if the child has been in that home and with the other adults who live there. The trial court also found it in the child's best interests to develop a relationship with her paternal extended family as well as with the mother and her family. The trial court made no findings as to whether these goals could be achieved through other means.

## Permanent Change of Station

We agree with the mother that the father's three-year assignment to Guam was a permanent change of station within the meaning of section 61.13002(7), rendering section 61.13002 inapplicable. *See* § 61.13002(7), Fla. Stat. ("This section does not apply to permanent change of station moves by military personnel, which shall be governed by s. 61.13001."). We therefore reverse this provision of the order and remand for further proceedings under section 61.13001.

---

[3] The order on appeal resolves numerous other issues between the parties, stopping short of dissolving the marriage; but the only presently appealable provision that the mother challenges is the designation for timesharing. *See* Fla. R. App. P. 9.130(a)(3)(C)(iii) (authorizing interlocutory appeals of non-final orders that determine "in family law matters . . . the rights or obligations of a party regarding child custody or time-sharing under a parenting plan").

When asked to interpret a statute, the court's guiding principle is legislative intent. *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013). To determine legislative intent, we look first to the plain meaning of the statute's text, which we may discern from a dictionary. *Green v. State*, 604 So. 2d 471, 473 (Fla. 1992). We should use the plain and ordinary meanings of words unless they lead to an unreasonable result. *State v. Burris*, 875 So. 2d 408, 414 (Fla. 2004). However, the court should prefer the technical sense of a word over the ordinary sense if the text of the statute suggests that the words are used in a technical sense. *Lewis v. Leon Cty.*, 73 So. 3d 151, 153 (Fla. 2011). Finally, "if a part of a statute appears to have a clear meaning if considered alone but when given that meaning is inconsistent with other parts of the same statute . . . , the Court will examine the entire act . . . in order to ascertain the overall legislative intent." *E.A.R. v. State*, 4 So. 3d 614, 629 (Fla. 2009) (quoting *Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC*, 986 So. 2d 1260, 1265–66 (Fla. 2008)). We review questions of statutory construction de novo. *Green*, 604 So. 2d at 473; *Lewis*, 73 So. 3d at 153.

We hold that the trial court misinterpreted the phrase "temporarily assigned to military service" for two reasons. First, the context demands that we apply technical definitions of the different types of military service rather than the ordinary dictionary definitions. Second, the lower court's construction of subsection (2) is inconsistent with subsection (7).

First, the context of the statute impels us to use the military's technical definitions for "temporarily assigned" and "permanent change of station." The title of this section clearly states that it relates to members of the armed forces. *See* § 61.13002 ("Temporary time-sharing modification and child support modification *due to military service*" (emphasis added)). In particular, the statute relates to types of military service assignments, and the military provides technical definitions for these terms. U.S. Dep't of Defense, *Dictionary of Military and Associated Terms* 7, 68, 86 (March 2018) (defining "deployment" and "activation"). Because the statute's applicability is based on the type of military service assignment the parent is given, it is logical to conclude that the legislature intended to use the same

6

definitions the military uses. Those definitions support the mother's arguments.

The Navy provides specific definitions for Permanent Change of Station (PCS) and Temporary Duty (TEMDU). A PCS is "the assignment . . . of a member . . . to a different [permanent duty station] under a competent travel order that does not specify the duty as temporary, provide for further assignment to a new PDS, or direct return to the old PDS." *Naval Military Personnel Manual* 1320-300, at 3 (2014 ed.).[4] When moving a servicemember to a new permanent duty station overseas, the government will pay to ship a servicemember's personal automobile. U.S. Dep't of Defense, *The Joint Travel Regulations* 5E-2 (Apr. 1, 2018).[5] The government also provides an Overseas Housing Allowance to servicemembers stationed overseas. U.S. Dep't of Defense, *Overseas Housing Allowance* (Feb. 2, 2018).[6] Finally, the military allows for the servicemember's family to accompany him or her to most permanent duty stations. *See The Joint Travel Regulations* 5B-6.

In contrast, the Navy defines TEMDU as "duty at one or more locations, other than the permanent duty station (PDS), under orders which do not provide, at least initially, for return to the starting point." *Id.* 1320-200, at 1.[7] TEMDU cannot be in excess of 180 days unless specially approved, and members on TEMDU resume regular duty upon completion of that assignment. *Id.* 1320-300, at 5.

The second reason for favoring the use of the military's definitions of "temporarily assigned" and "permanent change of station" is that it makes sense of the statute read as a whole. The

---

[4] http://www.public.navy.mil/bupers-npc/reference/milpersman/1000/1300Assignment/Documents/1320-300.pdf.

[5] http://www.defensetravel.dod.mil/Docs/perdiem/JTR.pdf.

[6] http://www.defensetravel.dod.mil/Docs/Fact_Sheet_OHA.pdf.

[7] http://www.public.navy.mil/bupers-npc/reference/milpersman/1000/1300Assignment/Documents/1320-200.pdf.

7

statute applies to three types of short duration military service, at the end of which the service member will normally return to his or her original location; but the statute does not apply to longer duration assignments where there is no guarantee that the service member will return to his or her original location. The legislature intended that the statute be applied to situations where the interruption in the service member's ability to exercise his or her timesharing would resume upon completion of the assignment. This intent is not clear until one reads through to subsection (7), where the statute clearly states that its provisions do not apply when a parent is relocating due to a permanent change in station.

The father's interpretation does not make sense of the entire section. If "temporarily assigned" meant merely assigned for some definite period of time, the statute could allow one parent to unilaterally effect a permanent change to the timesharing plan. If the Navy issued the father orders that set the length of his stay in Guam to twenty years, the statute as the father interprets it would allow him to designate his family members to exercise his timesharing rights for his daughter's entire childhood. This interpretation also makes little sense of subsection (7). We reject this interpretation as unreasonable and contrary to the Legislature's intent as expressed in the plain language of the statute.

We find that the legislature used the term "temporarily assigned" to mean a duty assignment of up to six months away from the member's permanent duty station that provides for the member's next duty assignment, whether that be resuming duty at the former PDS, beginning duty at a new PDS, or further temporary duty. *See The Joint Travel Regulations*, App. A, at 34. The father's assignment satisfies the military definition of a "permanent change of station" as used in section 61.13002(7), making section 61.13001 controlling. We therefore reverse this provision of the trial court's order and remand for application of the correct law.

REVERSED and REMANDED.

WOLF and BILBREY, JJ., concur.

―――――――――――――――――――――

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

―――――――――――――――――――――

William S. Graessle and Jonathan W. Graessle of William S. Graessle, P.A., Jacksonville, for Appellant.

Eduardo J. Mejias of AAA Family Law, LLC, Altamonte Springs, for Appellee.